# EXHIBIT A

**DECLARATIONS**

**STARSTONE SPECIALTY INSURANCE COMPANY**
Harborside Five
185 Hudson Street, Suite 2600
Jersey City, New Jersey 07311
855-275-6041

# PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO ONLY THOSE CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE INSURER DURING THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DEFENSE COSTS AND DAMAGES. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**NOTICE: THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THE NAMED INSURED'S STATE OF DOMICILE AND IS ISSUED AND DELIVERED AS A SURPLUS LINES COVERAGE PURSUANT TO THE INSURANCE STATUTES.**

POLICY NO: 83468Q220ASP

| | | | |
|---|---|---|---|
| ITEM 1. | NAMED INSURED: | Joy Construction Corp | |
| | ADDRESS: | a. | 40 Fulton Street, 22nd Floor<br>New York, NY 1003 |
| | MAILING ADDRESS: | b. | 40 Fulton Street, 22nd Floor<br>New York, NY 1003 |
| ITEM 2. | POLICY PERIOD: | From: December 07, 2022 to December 07, 2023<br>(12:01 A.M. local time at the address stated in Item 1.a.) | |
| ITEM 3. | POLICY PREMIUM: | $49,783 | |
| ITEM 4. | TOTAL AGGREGATE LIMIT OF LIABILITY: | $4,000,000 | |

ITEM 5.    COVERAGE PART LIMITS OF LIABILITY, RETENTIONS, PENDING & PRIOR LITIGATION DATES:

Only those Coverage Parts designated with an "X" are included under this Policy. If there is no "X" inserted next to any specified Coverage Part, such Coverage Part and any other reference to it in the Policy shall be deemed to be deleted.

MANAGEMENT LIABILITY COVERAGE PARTS

| Coverage Parts Noted With An "X" | Limit of Liability | Shared | Retention | Pending & Prior Litigation Date |
|---|---|---|---|---|
| **<x> Directors & Officers** | $2,000,000 | x | | |
| A. Insuring Agreement A-Insured Person Liability | | | $0 each **Claim** | See endorsement |
| B. Insuring Agreement B-Private Company Indemnification | | | $50,000 each Claim | See endorsement |
| C. Insuring Agreement C-Private Company Liability | | | $50,000 each Claim | See endorsement |
| | | | | |
| **<x> Employment** | $2,000,000 | x | | |
| A. Insuring Agreement A-Employment Practices Liability | | | $100,000 each Claim | See endorsement |
| B. Insuring Agreement B-Third Party Liability | | | $100,000 each Claim | See endorsement |
| | | | | |
| **<x> Fiduciary** | $2,000,000 | x | $5,000 each Claim | See endorsement |

Whenever printed in this Declarations, the boldface type terms shall have the same meanings as indicated in the Policy Form.

ITEM 6.    SUPPLEMENTAL EXTENDED REPORTING PERIOD PREMIUM:

125% of the Annual Policy Premium for a one (1) year Supplemental Extended Reporting Period;

ITEM 7.    FORMS & ENDORSEMENTS:

These Declarations, together with the attached Policy Form and Endorsements as stated in the SSS-MPL-ML-END-CW-001 (10-16) Policy Form Schedule and the **Application** (including all information furnished by the **Insured's** in the underwriting of this Policy), shall constitute the contract between the **Insureds** and the **Insurer** ("Policy").

ITEM 8.    NOTICE TO THE INSURER:

| A.  Address for Notice of Claim or Potential Claim: | B.  Address for all other Notices: |
|---|---|
| Attn:  StarStone US Services Claims Office<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (877) 412-7985<br>Tel: (201) 830-2568<br>Email: claims@starstone.com | Attn:  StarStone US Services<br>Specialty Underwriting Department<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (201) 743-7701<br>Tel: (201) 743-7700 |

The **Insurer** hereby causes this Policy to be signed by a duly authorized representative of the **Insurer**.

_____
Authorized Representative

February 13, 2022
DATE

Whenever printed in this Declarations, the boldface type terms shall have the same meanings as indicated in the Policy Form.

SSS-MPL-ML-DEC (03-21)                                                                 Page 2 of 2



Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
855-275-6041
www.starstone.com

# STARSTONE SPECIALTY INSURANCE COMPANY

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO ONLY THOSE CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE INSURER DURING THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DEFENSE COSTS AND DAMAGES. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance upon the statements in the **Application** and subject to all terms and conditions of this Policy, the **Insureds** agree with the **Insurer** as follows:

This Policy is comprised of the Declarations, one or more **Coverage Parts**, Common Definitions, Common Exclusions, Common Conditions, any and all attached endorsements and the **Application**. Although various **Coverage Parts** may be referenced in this Policy, the only **Coverage Parts** that provide coverage under this Policy are the **Coverage Parts** designated as being purchased in Item 5 of the Declarations.

The Common Definitions, Common Exclusions and Common Conditions apply to all **Coverage Parts**. Unless stated to the contrary in any **Coverage Part** or endorsement, the terms and conditions of each **Coverage Part** of this Policy apply only to that **Coverage Part** and shall not apply to any other **Coverage Part**. Any defined term referenced in the Common Definitions but defined in a **Coverage Part** shall, for the purpose of coverage under that **Coverage Part**, have the meaning set forth in that **Coverage Part**. If any provision in the Common Definitions, Common Exclusions or Common Conditions is inconsistent with, or in conflict with, any term, definition, exclusion or condition of an applicable **Coverage Part**, the respective term, definition, exclusion or condition of such **Coverage Part** shall control for the purpose of that **Coverage Part**.

### MANAGEMENT LIABILITY - PART 1
### DIRECTORS & OFFICERS COVERAGE

## I. INSURING AGREEMENTS

Subject to the terms, conditions and exclusions of this Policy:

A. INSURED PERSON LIABILITY INSURANCE

The **Insurer** shall pay on behalf of the **Insured Person**, **Loss** arising from any **Claim** first made against the **Insured Person** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy, except to the extent that such **Loss** has been paid or indemnified.

B. PRIVATE COMPANY INDEMNIFICATION INSURANCE

The **Insurer** shall pay on behalf of the **Company**, **Loss** arising from any **Claim** first made against an **Insured Person** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy, but only to the extent the **Company** has paid or indemnified such **Loss**.

C. PRIVATE COMPANY LIABILITY INSURANCE

The **Insurer** shall pay on behalf of the **Company**, **Loss** arising from any **Claim** first made against the **Company** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy.

## II. EXTENSIONS

A. EXCESS LIMIT OF LIABILITY FOR INSURED PERSONS

1. The **Insurer** shall pay an additional Excess Limit of Liability for **Insured Persons** in an amount not to exceed a maximum aggregate limit of liability of $1,000,000. Such amount shall be in addition to, and not part of, the **Applicable Limit of Liability**. In the event the Excess Limit of Liability for **Insured Persons** is exhausted by payment of **Loss**, then any and all obligations of the **Insurer** hereunder shall be deemed to be completely fulfilled and extinguished.

2. Coverage shall not be provided by this section II. A. for the first **Claim** made for which coverage is provided under this Policy. This Excess Limit of Liability for **Insured Persons** is available solely for **Loss** resulting from any subsequent **Claim** made against an **Insured Person** which is covered under Insuring Agreements A. of this **Coverage Part**.



3. The Excess Limit of Liability for **Insured Persons** shall be excess of any insurance available to pay loss, damages or defense costs for such **Claims**, including any insurance policy issued by another insurer, this Policy, and all insurance that is specifically excess to this Policy. Such other insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the **Insurer** shall have any obligation to make any payment under this section II. A.

B. DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE

The **Insurer** shall pay on behalf of the **Company**, **Investigative Costs** resulting from a **Derivative Demand** first received by the **Company** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter.

Any payment by the **Insurer** pursuant to this section II. B. shall be excess of the applicable Retention under the Directors & Officers Coverage Part as specified in Item 5 of the Declarations and shall be in addition to, and not part of, the **Applicable Limit of Liability**. The amount payable by the **Insurer** pursuant to this section II. B. shall not exceed a maximum aggregate limit of $250,000 per **Policy Period**.

C. FOREIGN CORRUPT PRACTICES ACT COVERAGE

The **Insurer** shall pay on behalf of the **Insured**, **Defense Costs** arising from any **Claim** seeking **FCPA Penalties** which is first made against the **Insured** during the **Policy Period** and reported to **Insurer** during the **Policy Period** or within 60 days thereafter, but only if such penalties are insurable in the venue in which such **Claim** is made and such **Defense Costs** are incurred with the **Insurer's** prior written consent.

Any payment by the **Insurer** pursuant to this section II. C. shall be excess of the applicable Retention under the Directors & Officers Coverage Part as specified in Item 5 of the Declarations and shall be part of, and not in addition to, the **Applicable Limit of Liability**. The amount payable by the **Insurer** pursuant to this section II. C. shall not exceed a maximum aggregate limit of $100,000 per **Policy Period**.

D. HIPAA AND PPACA COVERAGE

The **Insurer** shall pay on behalf of the **Insured**, any **Health Act Penalty** arising from a **Health Act Notice** first received by the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter; provided, however, the **Insured** shall not make any payment, admit liability or stipulate to any **Health Act Penalty** without the **Insurer's** prior written consent.

Any payment by the **Insurer** pursuant to this section II. D. shall be considered part of **Damages**, shall be excess of the applicable Retention under the Directors & Officers Coverage Part as specified in Item 5 of the Declarations, and shall be part of, and not in addition to, the **Applicable Limit of Liability**. The amount payable by the **Insurer** pursuant to this section II. D. shall not exceed a maximum aggregate limit of $100,000 per **Policy Period**.

In the event both the Directors & Officers Coverage (Part 1) and the Fiduciary Coverage (Part 3) are purchased, coverage as provided for in this section II. D. shall not be available under this Directors & Officers Coverage (Part 1).

E. SUBPOENA COVERAGE

In the event the **Insureds** fully comply with the reporting requirements of Part 6, Common Conditions, D. 2, and to the extent that coverage is not otherwise available under this Policy, the **Insurer** shall pay on behalf of an **Insured Person** reasonable fees and expenses, incurred with the **Insurer's** prior written consent, resulting from a **Subpoena** first received by the **Insured Person** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter. Any payment by the **Insurer** pursuant to this section II. E. shall be considered part of **Loss**, shall be part of, and not in addition to the **Applicable Limit of Liability** and no Retention shall apply. The amount payable by the **Insurer** pursuant to this section II. E. shall not exceed a maximum aggregate limit of $25,000 per **Policy Period**, regardless of the number of **Subpoenas** received during the **Policy Period**.

F. RETIREE COVERAGE

If, after the inception date of this Policy or the first policy issued by the **Insurer** in an uninterrupted series of policies of which this Policy is a renewal or replacement, and before the end of the **Policy Period**, an **Insured Person** retires and no longer serves in his or her capacity as an **Insured Person** and:

1. this Policy is cancelled or non-renewed for reasons other than nonpayment of premium; and

2. this Policy is not replaced by any other directors and officers liability coverage;

then coverage provided under Insuring Agreement A of this **Coverage Part** for such **Insured Person** shall be extended for a period of six years from such **Insured Person's** official date of retirement, but only with respect to **Claims** for **Wrongful Acts** fully occurring prior to such official date of retirement.



Any matter reported pursuant to section II. B. or D. above shall be deemed to be a notice of fact, circumstance, or situation, which may reasonably be expected to give rise to a **Claim**, as provided for in Part 6, Common Conditions, D. 2. of this Policy.

## III. DEFINITIONS

Whenever printed in boldface type, and whether in singular or plural form, the following terms shall have the meanings indicated below for purposes of this **Coverage Part**.

A. **Claim** means:

　1. a written demand for monetary, non-monetary or injunctive relief against an **Insured**, by reason of a **Wrongful Act**;

　2. a civil, administrative, regulatory, arbitration or mediation proceeding against an **Insured**, by reason of a **Wrongful Act**, which is commenced by service of a complaint or similar document or the filing of a notice of charges;

　3. an official request for **Extradition** of an **Insured Person**, or a criminal proceeding which is commenced by return of an indictment against an **Insured Person**, by reason of a **Wrongful Act**;

　4. a civil, criminal, administrative, or regulatory investigation of one or more **Insured Persons**, by reason of a **Wrongful Act**, commenced by the service upon, or other receipt by, an **Insured Person**, of a written notice from the investigating authority identifying the **Insured Person** as an individual against whom a formal proceeding may be commenced;

　5. a criminal proceeding which is commenced by return of an indictment against the **Company**, by reason of a **Wrongful Act**; or

　6. a written request that an **Insured** sign an agreement to toll or waive any statute of limitations, by reason of a **Wrongful Act**.

**Claim** shall not include a **Derivative Demand, Health Act Notice,** or **Subpoena,** or any labor or grievance proceeding or investigation which is subject to a collective bargaining agreement. A **Claim** shall be deemed to have been first made at the time written notice of the **Claim** is first received by any **Executive Officer**. All **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the date on which the earliest such **Claim** was first made.

B. **Derivative Demand** means any written demand by a security holder of the **Company**, upon the board of directors or management board of such **Company**, to bring a civil proceeding in a court of law against any **Insured Person** for a **Wrongful Act**, provided such **Derivative Demand** is brought and maintained without solicitation by, or assistance or participation of, any **Insured Person**.

C. **D&O Wrongful Act** means:

　1. with respect to any **Insured Person**, any actual or alleged act, error or omission, misstatement, misleading statement, neglect, or breach of duty by such **Insured Person** in his or her capacity as such, or any matter claimed against them by reason of their status as an **Insured Person**;

　2. with respect to the **Company**, any actual or alleged act, error or omission, misstatement, misleading statement, neglect, or breach of duty by the **Company**; or

　3. any actual or alleged act, error or omission, misstatement, misleading statement, neglect, or breach of duty by an **Insured Person** in an **Outside Capacity**.

D. **Extradition** means a process by which one country surrenders a person to another country to face prosecution, incarceration or to answer any criminal accusation.

E. **FCPA Penalties** means civil penalties assessed against an **Insured Person** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act).

F. **Investigative Costs** means reasonable costs, fees and expenses incurred by a **Company**, with the **Insurer's** prior written consent, solely with respect to an investigation or evaluation required to determine whether it is in the best interest of the **Company** to commence a civil proceeding as demanded by a **Derivative Demand**. **Investigative Costs** shall not include salaries, wages, fees or benefits of any **Insured Person**.

G. **Outside Capacity** means service by an **Insured Person** as a director, trustee, or equivalent executive position with an **Outside Entity**, but only if such service is or was at the specific request or direction of the **Company**.

H. **Outside Entity** means any not-for-profit entity.



I.  **Subpoena** means a subpoena or written request compelling witness testimony or document production from an **Insured**.

J.  **Wrongful Act** means a **D&O Wrongful Act**.

## IV. EXCLUSIONS

The **Insurer** shall not be liable under this Directors & Officers Coverage (Part 1) to pay any **Loss** arising from any **Claim** made against any **Insured**:

A.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Wrongful Act** as defined in any other **Coverage Part**;

B.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any industrial, non-industrial or environmental actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of any **Pollutant** into or on real or personal property, water or the atmosphere or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutant**, or any voluntary decision to do so; provided, however, this exclusion shall only apply to **Loss** arising from a **Claim** made against the **Company** under Insuring Agreement C and shall not apply to any **Claim**:

1.  that is a derivative action brought or maintained by a security holder of the **Company**, but only if such **Claim** is instigated and continued completely independent of, and totally without the solicitation, assistance, participation or intervention of any **Insured**; or

2.  brought or maintained by a security holder of the **Company**, in their capacity as such, but only if such security holder's **Claim** is instigated and continued completely independent of, and totally without the solicitation, assistance, participation or intervention of any **Insured**;

C.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged infringement, piracy or misappropriation of any actual, alleged or prospective copyright, patent, service mark, trade name, trademark, licensing right, idea or trade secret or any other intellectual property rights; provided, however, this exclusion shall only apply to **Loss** arising from a **Claim** made against the **Company** under Insuring Agreement C;

D.  which is brought or maintained by, on behalf of, or in the right of any **Insured** or any **Outside Entity** on behalf of which an **Insured Person** is or was serving in an **Outside Capacity**, or which is brought or maintained by any security holder of the **Company**, whether directly or derivatively; provided, however, this exclusion shall not apply to any **Claim**:

1.  that is a derivative action brought or maintained on behalf of the **Company** by one or more persons who are not **Insured Persons**, but only if such **Claim** is instigated and maintained without the solicitation, assistance or participation of any **Insured**, other than assistance that is protected pursuant to any federal or state whistleblower statute or any regulation promulgated thereunder;

2.  brought or maintained by any security holder of the **Company**, including any **Employee** in his or her capacity as a security holder of the **Company**, but only if such security holder's **Claim** is instigated and continued completely independent of, and totally without the solicitation, assistance, active participation or intervention of any **Executive Officer** or the **Company**;

3.  by any former **Insured Person** who has not served with, been employed by or provided consultation to the **Company** in any capacity for at least 2 years prior to such **Claim** being first made, but only if such **Claim** is instigated and maintained without the solicitation, assistance or participation of the **Company** or any **Insured Person** who is or has served with, been employed by, or provided consultation to the **Company** in any capacity in the last 2 years;

4.  by any **Insured Person** for contribution or indemnity, where such contribution or indemnity **Claim** results solely from another **Claim** covered by this **Coverage Part**;

5.  brought on behalf of the **Company** in any bankruptcy proceeding, by any receiver, trustee, creditors' committee, examiner or similar official appointed to take control of, supervise or liquidate the **Company**, or any assignee of such receiver, trustee, creditors' committee, examiner, or similar official or entity; or

6.  brought or maintained outside the United States of America and Canada, by or on behalf of the **Company** against an **Insured Person**;

E.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving liability under any written contract or agreement; provided, however, this exclusion shall not apply to liability that would have attached in the absence of such contract or agreement or to **Defense Costs** arising from a **Claim** made against the **Insured Person** under Insuring Agreement A or B;

F.   for any actual or alleged violation of any of the responsibilities, obligations or duties imposed by **ERISA**;

G.   for any actual or alleged violation of any of the duties, obligations or responsibilities imposed by the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, or the Occupational Safety and Health Act, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law;

H.   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of any of the duties, obligations or responsibilities imposed by the Fair Labor Standards Act, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law governing the classification of employees to determine their eligibility for compensation or the payment of wages, overtime, on-call time, rest periods, expense reimbursement or minimum wages;

I.   for any actual or alleged failure to comply with any law concerning disability benefits, unemployment insurance, social security or workers compensation, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law;

J.   for any actual or alleged liability arising out of any lockout, strike, picket line, hiring of any replacement worker or other similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement;

K.   for any actual or alleged false arrest, detention or imprisonment, malicious prosecution, wrongful eviction, wrongful entry, invasion of the right of private occupancy, or oral or written publication of material that defames a person or organization or violates a person's right of privacy;

L.   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged act or omission of an **Insured Person** serving in a capacity as, or by reason of his or her status as, a director, officer, trustee, regent, governor, manager or member of the board of managers of any entity other than the **Company**; provided, however, this exclusion shall not apply to any **Outside Capacity**;

M.   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the **Insured's** performance of, or failure to perform, professional services for others; provided, however, this exclusion shall not apply to any **Claim** alleging failure to supervise those who performed or failed to perform such professional services. This exclusion shall only apply to **Loss** arising from a **Claim** made against the **Company** under Insuring Agreement C;

N.   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged recall, defect, deficiency, inadequacy, malfunction, or dangerous condition of any product, or failure of any product to perform as a result of any defect, deficiency, inadequacy, malfunction, or dangerous condition in such product or its design, manufacture, or implementation; provided, however, this exclusion shall only apply to **Loss** arising from a **Claim** made against the **Company** under Insuring Agreement C;

O.   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged employment-related practices including but not limited to any workplace discrimination or harassment, abusive or hostile work environment, wrongful discharge or termination, wrongful demotion or discipline, violation of the Family and Medical Leave Act (or any similar state or local law), retaliation, employment-related misrepresentation, negligent hiring, supervision, evaluation, retention or performance evaluation, or wrongful reference.

For purposes of determining the applicability of the Exclusions in this Section IV, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**.

## V.   PRIORITY OF PAYMENTS

In the event payment by the **Insurer** is due for **Loss** under the provisions of this **Coverage Part**, the **Insurer** shall first pay all **Loss** payable under Insuring Agreement A. Then, any remaining amount of the **Applicable Limit of Liability** which is available after the payments under Insuring Agreement A, shall be paid by the **Insurer** for any **Loss** covered under Insuring Agreements B and C, if the **Insurer** is directed to do so in writing by the **Named Insured**.



**MANAGEMENT LIABILITY - PART 2**
**EMPLOYMENT PRACTICES COVERAGE**

## I.  INSURING AGREEMENTS

Subject to the terms, conditions and exclusions of this Policy:

A.  EMPLOYMENT PRACTICES LIABILITY INSURANCE

The **Insurer** shall pay on behalf of the **Insured**, **Loss** arising from any **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy.

B.  THIRD PARTY LIABILITY INSURANCE

The **Insurer** shall pay on behalf of the **Insured**, **Loss** arising from any **Third Party Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy.

## II.  DEFINITIONS

Whenever printed in boldface type, and whether in singular or plural form, the following terms shall have the meanings indicated below for purposes of this **Coverage Part**.

A.  **Claim** means:

1.  a written demand for monetary, non-monetary or injunctive relief against an **Insured**, by reason of a **Wrongful Act**;

2.  a civil, administrative, regulatory or arbitration proceeding against an **Insured**, by reason of a **Wrongful Act**, which is commenced by service of a complaint or similar document or the filing of a notice of charges;

3.  a formal administrative or regulatory investigation of an **Insured**, by reason of a **Wrongful Act**, which is commenced by written notice or subpoena from the Equal Employment Opportunity Commission or any similar federal, state, local or foreign government agency;

4.  a criminal proceeding outside the United States of America which is commenced by a return of an indictment against an **Insured**, by reason of a **Wrongful Act**; or

5.  a written request that an **Insured** sign an agreement to toll or waive any statute of limitations, by reason of a **Wrongful Act**.

**Claim** shall not include any labor or grievance proceeding or investigation which is subject to a collective bargaining agreement. A **Claim** shall be deemed to have been first made at the time written notice of the **Claim** is first received by any **Insured**. All **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the date on which the earliest such **Claim** was first made.

B.  **Employment Wrongful Act** means any actual or alleged employment-related:

1.  discrimination based upon race, color, religion, age, gender, national origin, sexual orientation, pregnancy, disability or any other basis prohibited by federal, state, or local law;

2.  wrongful dismissal, discharge, or termination of employment, whether actual or constructive;

3.  sexual or workplace harassment including workplace bullying;

4.  violation of employment discrimination laws including any actual or alleged wrongful: deprivation of career opportunity, failure to promote, discipline, evaluation, demotion, denial of tenure, modification of any term or condition of employment; or limitation, segregation or classification of any employee;

5.  retaliation in response to any **Employee** exercising his or her rights under any law;

6.  failure to enforce existing employment-related corporate policies and procedures relating to retention, supervision, hiring or training;

7.  defamation, humiliation, or invasion of privacy;

8.  breach of any verbal, written or implied contract of employment including any contractual obligation arising out of any employee handbook, personnel manual, or policy statement;

by any **Insured** against an **Employee**; provided, however, **Employment Wrongful Act** shall not include breach of an express contract or agreement between an independent contractor or any entity on behalf of such independent contractor, and the **Company**.



C. **Third Party** means any natural person who is not an **Insured** and who is or was a customer, vendor, supplier, applicant or business invitee of the **Company**.

D. **Third Party Claim** means any **Claim** brought by, on behalf of, or in the right of a **Third Party**.

E. **Third Party Wrongful Act** means any actual or alleged:

    1.  discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, age, gender, national origin, disability, sexual orientation, pregnancy, or any other basis prohibited by federal, state, or local law; or

    2.  sexual harassment, including any unwelcome sexual advance or other conduct of a sexual nature, against a **Third Party**.

F. **Wrongful Act** means:

    1.  with respect to I. Insuring Agreement A. of this **Coverage Part**, any **Employment Wrongful Act**.

    2.  with respect to I. Insuring Agreement B. of this **Coverage Part**, any **Third Party Wrongful Act**.

## III. EXCLUSIONS

The **Insurer** shall not be liable under this Employment Practices Coverage (Part 2) to pay any **Loss** arising from any **Claim** made against any **Insured**:

A. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Wrongful Act** as defined in any other **Coverage Part**;

B. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of any of the duties, obligations or responsibilities imposed by the Fair Labor Standards Act, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law governing the classification of employees to determine their eligibility for compensation or the payment of wages, overtime, on-call time, rest periods, expense reimbursement, or minimum wages; provided, however, this exclusion shall not apply to the extent a **Claim** is for amounts owed under the Equal Pay Act of 1963 or for retaliation in response to any **Employee** exercising his or her rights under any such law;

C. for any actual or alleged violation of any of the duties, obligations or responsibilities imposed by the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, or the Occupational Safety and Health Act, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law; provided, however, this exclusion shall not apply to any **Claim** for retaliation in response to any **Employee** exercising his or her rights under any such law;

D. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged failure to comply with any law concerning disability benefits, unemployment insurance, social security or workers compensation, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law; provided, however, this exclusion shall not apply to any **Claim** for retaliation in response to any **Employee** exercising his or her rights under any such law;

E. for any actual or alleged violation of any of the responsibilities, obligations or duties imposed by **ERISA**; provided, however, this exclusion shall not apply to any **Claim** for retaliation in response to any **Employee** exercising his or her rights under any such law;

F. for any actual or alleged liability arising out of any lockout, strike, picket line, hiring of any replacement workers or other similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement; provided, however, this exclusion shall not apply to any **Claim** for retaliation in response to any **Employee** exercising his or her rights under any such law;

G. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving liability under any written or verbal contract of employment; provided, however, this exclusion shall not apply to **Defense Costs** or liability that would have attached in the absence of such contract or agreement;

H. to the extent such **Loss**, other than **Defense Costs**, constitutes employment related benefits, bonuses, commissions, profit sharing, perquisites, deferred compensation, stock options, or any other type of compensation earned by the claimant in the course of employment; provided, however, this exclusion shall not apply to front pay or back pay.



MANAGEMENT LIABILITY - PART 3
FIDUCIARY COVERAGE

## I. INSURING AGREEMENT

Subject to the terms, conditions and exclusions of this Policy, the **Insurer** shall pay on behalf of the **Insured**, **Loss** arising from any **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy.

## II. EXTENSIONS

### A. HIPAA AND PPACA COVERAGE

The **Insurer** shall pay on behalf of the **Insured**, any **Health Act Penalty** arising from a **Health Act Notice** first received by the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter; provided, however, the **Insured** shall not make any payment, admit liability or stipulate to any **Health Act Penalty** without the **Insurer's** prior written consent.

Any payment by the **Insurer** pursuant to this section II. A. shall be considered part of **Damages**, shall be excess of the applicable Retention under the Fiduciary Coverage Part as specified in Item 5 of the Declarations, and shall be part of, and not in addition to, the **Applicable Limit of Liability**. The amount payable by the **Insurer** pursuant to this section II. A. shall not exceed a maximum aggregate limit of $100,000 per **Policy Period**.

### B. SETTLEMENT PROGRAM COVERAGE

The **Insurer** shall pay on behalf of the **Insured**, **Settlement Fees** arising from a **Settlement Program Notice** first received by the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter; provided, however, the **Insured** shall not incur any **Settlement Fees** without the **Insurer's** prior written consent.

Any payment by the **Insurer** pursuant to this section II. B. shall be considered part of **Damages**, shall be excess of the applicable Retention under the Fiduciary Coverage Part as specified in Item 5 of the Declarations, and shall be part of, and not in addition to, the **Applicable Limit of Liability**. The amount payable by the **Insurer** pursuant to this section II. B. shall not exceed a maximum aggregate limit of $100,000 per **Policy Period**.

Any matter reported pursuant to this section II. shall be deemed to be a notice of fact, circumstance, or situation, which may reasonably be expected to give rise to a **Claim**, as provided for in Part 6, Common Conditions, D. 2. of this Policy.

## III. DEFINITIONS

Whenever printed in boldface type, and whether in singular or plural form, the following terms shall have the meanings indicated below for purposes of this **Coverage Part**.

A. **Administration** means the rendering of advice to any **Employee** with regard to any **Plan**, providing any explanation to any **Employee** with regard to any **Plan**, or handling any record or effecting any enrollment, termination or cancellation of any **Employee** under any **Plan**.

B. **Claim** means:

1. a written demand for monetary or non-monetary relief against an **Insured**, by reason of a **Wrongful Act**;

2. a civil, criminal, administrative, regulatory or arbitration proceeding against an **Insured**, by reason of a **Wrongful Act**, which is commenced by service of a complaint or similar document or the filing of a notice of charges;

3. a formal investigation of an **Insured**, by reason of a **Wrongful Act**, which is commenced by written notice from the Department of Labor or the Pension Benefit Guaranty Corporation; or

4. a written request that an **Insured** sign an agreement to toll or waive the statute of limitations, by reason of a **Wrongful Act**.

**Claim** shall not include a **Health Act Notice**, **Settlement Program Notice** or any labor or grievance proceeding or investigation which is subject to a collective bargaining agreement. A **Claim** shall be deemed to have been first made at the time written notice of the **Claim** is first received by any **Insured**. All **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the date on which the earliest such **Claim** was first made.



C. **Fiduciary Wrongful Act** means any actual or alleged breach of any of the duties, responsibilities, or obligations imposed upon **Plan** fiduciaries by **ERISA**; any actual or alleged negligent act, error or omission in the **Administration** of any **Plan** committed or attempted by any **Insured**; or any other matter alleged against such **Insured** solely by reason of such **Insured's** service as a **Plan** fiduciary. **Fiduciary Wrongful Act** also includes any actual or alleged breach of any of the duties, responsibilities or obligations imposed by **ERISA**, COBRA, or HIPAA, in the discharge of the **Insured's** duties in a settlor capacity with respect to a **Plan**.

D. **Plan** means:

1. any Welfare Benefit Plan as defined in **ERISA**, which was, is now, or becomes sponsored by the **Company** exclusively for the benefit of the **Employees** of the **Company**;

2. any Pension Benefit Plan as defined in **ERISA**, which is sponsored by the **Company** exclusively for the benefit of the **Employees** of the **Company**, provided, such plan existed on or before the inception date of this Policy as specified in Item 2 of the Declarations and has been reported in writing to the **Insurer** as part of the **Application**;

3. any employee benefit plan, including an excess benefit plan, not subject to Title 1 of **ERISA**, which is sponsored by the **Company** exclusively for the benefit of the **Employees** of the **Company**, provided, such plan existed on or before the inception date of this Policy as specified in Item 2 of the Declarations; and

4. any government mandated benefit program for disability benefits, unemployment insurance, social security, or workers compensation for **Employees** of the **Company**.

**Plan** does not include any employee stock ownership plan created or acquired by the **Named Insured** after the inception date of the Policy as specified in Item 2 of the Declarations. **Plan** does not include any multi-employer plan regardless of the date such plan was created.

E. **Settlement Fees** mean fees, fines or penalties assessed against an **Insured** by a governmental authority, pursuant to a **Settlement Program**, for the actual or alleged inadvertent failure of any **Plan** to comply with any statute, rule or regulation; provided, however, that **Settlement Fees** shall not include:

1. any benefits, costs to correct the non-compliance or any other charges, expenses, or taxes; or

2. any fees, fines or penalties relating to a **Plan** that any **Insured Person** knew to be actually or allegedly non-compliant prior to the earlier of:

   a. this Policy's inception date as specified in Item 2 of the Declarations; or

   b. the inception date of the first policy, in an uninterrupted series of policies of which this Policy is a direct or indirect renewal or replacement, which the **Insurer** issued to the **Company**.

F. **Settlement Program** means any voluntary compliance resolution program or similar settlement program administered by the United States Internal Revenue Service, United States Department of Labor, or any other domestic or foreign authority, including, but not limited to, the Employee Plans Compliance Resolution System, Audit Closing Agreement Program, Voluntary Compliance Resolution Program, Walk-in Closing Agreement Program, Administrative Policy Regarding Self-Correction, Tax Sheltered Annuity Voluntary Correction Program, Delinquent Filer Voluntary Compliance Program, and Voluntary Fiduciary Correction Program, or any similar program administered by a governmental authority located outside of the United States.

G. **Settlement Program Notice** means written notice in connection with a **Settlement Program**.

H. **Wrongful Act** means any **Fiduciary Wrongful Act**.

## IV. EXCLUSIONS

The **Insurer** shall not be liable under this Fiduciary Coverage (Part 3) to pay any **Loss** arising from any **Claim** made against any **Insured**:

A. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Wrongful Act** as defined in any other **Coverage Part**;

B. to the extent such **Loss**, other than **Defense Costs**, constitutes:

1. the return or reversion to an employer of any contribution or asset of a **Plan**; or

2. benefits due or to become due under the terms of any **Plan**, or benefits which would be due under the terms of any **Plan** if such terms complied with all applicable law;

C. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged failure to collect or fund contributions owed to any **Plan**;



D. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged liability under any contract or agreement; provided, however, this exclusion shall not apply to any contract or agreement to which the **Plan** was established;

E. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged employment-related practices including but not limited to any workplace discrimination or harassment, abusive or hostile work environment, wrongful discharge or termination, wrongful demotion or discipline, violation of the Family and Medical Leave Act (or any similar state or local law), retaliation, employment-related misrepresentation, negligent hiring, supervision, evaluation, retention or performance evaluation, or wrongful reference; provided, however this exclusion shall not apply to **Claims** asserted under **ERISA**;

F. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of any of the duties, obligations or responsibilities imposed by the Fair Labor Standards Act, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law governing the classification of employees to determine their eligibility for compensation or the payment of wages, overtime, on-call time, rest periods, expense reimbursement or minimum wages;

G. for any actual or alleged failure to comply with any law concerning disability benefits, unemployment insurance, social security or workers compensation, including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law, except the Consolidated Omnibus Budget Reconciliation Act of 1985 and the Health Insurance Portability and Accountability Act of 1996, or any amendments thereto or any rules or regulations promulgated thereunder;

H. for any actual or alleged liability arising out of any lockout, strike, picket line, hiring of any replacement workers or other similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement.

## MANAGEMENT LIABILITY - PART 4
## COMMON DEFINITIONS

Whenever printed in boldface type, and whether in singular or plural form, the following terms shall have the meanings indicated below.

A. **Applicable Limit of Liability** means:

1. the Total Aggregate Limit of Liability as specified in Item 4 of the Declarations, unless one or more of the Coverage Part Limits of Liability as specified in Item 5 of the Declarations is purchased;

2. if one or more Coverage Part Limits of Liability as specified in Item 5 of the Declarations is purchased, then, **Applicable Limit of Liability** means:

   a. with respect to the Directors & Officers Coverage (Part 1), the Directors & Officers Coverage Part Limit of Liability as specified in Item 5 of the Declarations, if purchased;

   b. with respect to the Employment Practices Coverage (Part 2), the Employment Practices Coverage Part Limit of Liability as specified in Item 5 of the Declarations, if purchased;

   c. with respect to the Fiduciary Coverage (Part 3), the Fiduciary Coverage Part Limit of Liability as specified in Item 5 of the Declarations, if purchased.

B. **Application** means the application for insurance and any material submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this Policy.

C. **Change In Control** means:

1. the acquisition by another entity or person, or group of entities, or persons acting in concert, resulting in the ownership or control of more than fifty percent (50%) of:

   a. the **Named Insured's** voting stock or voting rights; or

   b. the **Named Insured's** total consolidated assets as of the date of the **Named Insured's** most recent audited consolidated financial statement prior to such acquisition;

2. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity; or

3. the consolidation of the **Named Insured** with another entity.

D. **Claim** shall have the meaning set forth in the applicable **Coverage Part**.



E. **Company** means the **Named Insured** and any **Subsidiary**. In the event of a bankruptcy proceeding by or against a **Company**, **Company** shall also mean the resulting entity named as a debtor in possession within the United States Bankruptcy Code, or an equivalent legal status under foreign law.

F. **Coverage Part** means, individually or collectively, the following coverage parts, if purchased, as specified in Item 5 of the Declarations:

1. Directors & Officers Coverage (Part 1)
2. Employment Practices Coverage (Part 2)
3. Fiduciary Coverage (Part 3)

G. **Damages** means the monetary portion of any award, settlement or judgment, including pre-judgment and post-judgment interest, provided always that **Damages** shall not include:

1. taxes, civil fines, criminal fines, sanctions, fees, restitution or penalties imposed by law, statute, regulation or court rule, except:

   a. the 5% or less, or the 20% or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502 (i) or (l) of **ERISA**; and

   b. where permitted by law, civil penalties imposed under the English Pension Schemes Act 1993, the English Pensions Act 1995, or the Pensions Act 2004 and 2008, including amendments thereto;

2. punitive, exemplary or multiplied damages, except to the extent such damage is insurable under the law of any jurisdiction which has a substantial relationship to the **Insured** or the **Claim** seeking such damage, and which is most favorable to the insurability of such damage;

3. amounts that represent the return of any fee, charge, commission, gain or other compensation paid to an **Insured**;

4. costs associated with any accommodation, including the cost to make any building or property more accessible or accommodating to any person;

5. any amounts awarded for actual or alleged violations of the Fair Labor Standards Act including amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law relating to the classification of employees to determine the payment of wages, overtime, on-call time, rest periods, expense reimbursement or minimum wages;

6. severance pay or amounts owed under an express written contract of employment, leased worker agreement or independent contractor services agreement, or a written agreement to make payment in the event of termination of employment;

7. liquidated damages, except liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Equal Pay Act, or Family and Medical Leave Act;

8. cost of compliance with any form of injunctive or other non-monetary or declaratory relief; or

9. any amounts deemed uninsurable under the law pursuant to which this Policy may be construed.

H. **Defense Costs** means fees charged by any lawyer designated by the **Insurer** to defend the **Insured**, and if authorized by the **Insurer**, all other fees and expenses resulting from the investigation, adjustment, defense or appeal of any **Claim** including the cost of appeal bonds; however, the **Insurer** shall have no obligation to apply for or furnish appeal bonds on behalf of any **Insured**.

**Defense Costs** shall not include salaries and expenses of regular employees or officers of the **Insurer** or any salaries, wages, fees, costs or expenses of any **Insured**. **Defense Costs** shall be part of, and not in addition to, the **Applicable Limit of Liability**.

I. **Employee** means any natural person whose labor or service is engaged by and directed by the **Company** and is on the payroll of the **Company**, including any full-time, part-time, and seasonal worker. **Employee** shall also mean a temporary worker, leased worker, independent contractor, committee member or volunteer for the **Company** solely with respect to conduct within the scope of his or her duties on behalf of the **Company**.

J. **ERISA** means the Employee Retirement Income Security Act of 1974, including amendments thereto or any similar federal, state, local or foreign law, whether statutory or common law.

K. **Executive Officer** means any natural person who was, or now is, a duly elected or appointed director, officer, trustee, governor, audit committee member, risk manager, or in-house general counsel of the **Company**, or any member of any **Company** advisory or scientific board. **Executive Officer** shall include a shadow director of the **Company** as defined under the United Kingdom's Companies Act 2006, including amendments thereto. If the **Company** is a limited liability company, **Executive Officer** shall also mean a natural person who was, or now is, a member of the management board. **Executive Officer** also means the equivalent status of any of the foregoing under the law of any other country.



L.  **Health Act Notice** means written notice from a governmental agency in connection with an actual or alleged violation by an **Insured** of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or the Patient Protection and Affordable Care Act (PPACA).

M.  **Health Act Penalty** means a fine or penalty assessed against the **Company**, or any **Insured Person** in his or her capacity as such, pursuant a violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or the Patient Protection and Affordable Care Act (PPACA).

N.  **Insured** means the **Company** and any **Insured Person**.

O.  **Insured Person** means:

1.  Solely with respect to the Directors & Officers Coverage (Part 1); any past or present **Executive Officer** or **Employee**;

2.  Solely with respect to the Employment Practices Coverage (Part 2); any past or present **Executive Officer**, in his or her capacity as such, or **Employee** but solely while acting within the scope of employment with the **Named Insured** or a **Subsidiary**;

3.  Solely with respect to the Fiduciary Coverage (Part 3), any past or present **Executive Officer** or director, officer, governor, or trustee of any **Plan**.

P.  **Insurer** means the Insurance Company shown in the Declarations.

Q.  **Interrelated Wrongful Acts** means **Wrongful Acts** that have in common any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

R.  **Loss** means **Damages** and **Defense Costs**.

S.  **Named Insured** means the entity as specified in Item 1 of the Declarations.

T.  **Pending & Prior Litigation Date** means the applicable date, if any, specified in Item 5 of the Declarations under the heading "Pending & Prior Litigation Date".

U.  **Policy Period** means the period of time from the inception date of this Policy as set forth in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this Policy.

V.  **Pollutant** means any substance, located anywhere in the world, exhibiting any hazardous characteristic as defined by, or identified on a list of hazardous substances issued by, the U.S. Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. **Pollutant** also means any air emission, odor, waste water, oil, oil product, infectious waste, medical waste, asbestos, asbestos product, silica, noise, fungus, bacteria, mold, mildew, mycotoxin, spore, scent or byproduct produced or released by fungi, (other than any fungi intended by the **Insured**) and any electric or magnetic or electromagnetic field. **Pollutant** also includes, but is not limited to, any solid, liquid, gaseous, thermal, biological, nuclear irritant, radiological, contaminant, smoke, soot, fume, acid, alkali, chemical or waste material.

W.  **Subsidiary** means any:

1.  corporation or limited liability company of which the **Named Insured** owns more than fifty percent (50%) of the outstanding stock or other interest representing the present right to vote, designate or select a majority of the board of directors of a corporation or of the management board of a limited liability company; but only during such time as the **Named Insured** owns such stock or other interest representing the right to vote, designate or select a majority of the board of directors of a corporation or the management board of a limited liability company;

2.  corporation or limited liability company of which the **Named Insured** owns, indirectly through one or more of its **Subsidiaries**, more than fifty percent (50%) of the outstanding stock or other interest representing the present right to vote, designate or select a majority of the board of directors of a corporation or of the management board of a limited liability company; but only during such time as the **Named Insured** owns, indirectly through one or more of its **Subsidiaries**, such stock or other interest representing the right to vote, designate or select a majority of the board of directors of a corporation or the management board of a limited liability company; or

3.  joint venture entity in which the **Named Insured** or a **Subsidiary** has an exact fifty percent (50%) ownership of the interests of such joint venture entity and where, pursuant to a written joint venture agreement, the **Named Insured** or any **Subsidiary** controls the management and operations of such joint venture entity.

X.  **Wrongful Act** shall have the meaning set forth in the applicable **Coverage Part**.



**MANAGEMENT LIABILITY - PART 5**
**COMMON EXCLUSIONS**

In addition to the Exclusions listed in the **Coverage Parts**, the **Insurer** shall not be liable under this Policy to pay any **Loss** arising from any **Claim** made against any **Insured**:

A.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1.  Solely with respect to Directors & Officers Coverage (Part 1) and Fiduciary Coverage (Part 3), any criminal, dishonest, fraudulent, deliberate, intentional or willful act or omission committed by any **Insured**; however, this exclusion shall only apply if a final and non-appealable judgment in the underlying action or any other action or proceeding involving the **Insured** (other than a declaratory action or proceeding brought by or against the **Insurer**) establishes the **Insured** committed such act or omission or an **Insured** pleads guilty to such act or omission in a criminal proceeding;

2.  Solely with respect to Employment Practices Coverage (Part 2), any criminal or fraudulent act or omission committed by any **Insured**; however, this exclusion shall only apply if a final and non-appealable judgment in the underlying action or any other action or proceeding involving the **Insured** (other than a declaratory action or proceeding brought by or against the **Insurer**) establishes the **Insured** committed such act or omission or an **Insured** pleads guilty to such act or omission in a criminal proceeding;

B.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled; however, this exclusion shall only apply if a final and non-appealable judgment in the underlying action or any other action or proceeding involving the **Insured** (other than a declaratory action or proceeding brought by or against the **Insurer**) establishes the **Insured** gained such profit, remuneration or financial advantage or an **Insured** pleads guilty to gaining such profit, remuneration or financial advantage in a criminal proceeding;

Severability of Exclusions: For purposes of determining the applicability of Exclusions A. and B. above, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**; provided, however, that the **Wrongful Act** or knowledge of the Chief Executive Officer, Chief Financial Officer or General Counsel (or the foreign or domestic equivalent of such positions) shall be imputed to the **Company**.

C.  for any actual or alleged bodily injury, or emotional distress or mental anguish arising from such bodily injury, or any actual or alleged damage to, or destruction of any tangible property, including loss of use thereof; provided, however, this exclusion shall not apply:

1.  to **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense or appeal of a **Claim** against the **Company** for violation of the United Kingdom's Corporate Manslaughter and Corporate Homicide Act 2007; or

2.  to any **Claim** for emotional distress or mental anguish under the Employment Practices Coverage (Part 2);

D.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1.  any fact, circumstance, situation, transaction, event or **Wrongful Act** that was the subject of any written notice given under any policy of insurance prior to inception of this Policy; or any other **Wrongful Act** whenever occurring, that, together with a **Wrongful Act** described previously in this paragraph would constitute **Interrelated Wrongful Acts**; or

2.  any prior or pending written demand, suit, complaint, proceeding, investigation, order, judgment, or notice of violation, that is against any **Insured** and received by any **Insured**, prior to the applicable **Pending & Prior Litigation Date**;

E.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or alleged **Wrongful Act**, by a **Subsidiary** or any **Insured Person** of such **Subsidiary**, occurring prior to the date such entity became a **Subsidiary** or subsequent to the date such entity ceased to be a **Subsidiary**; or while such entity was a **Subsidiary** and that, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

F.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1.  any public offering of securities by the **Company**, or the solicitation, sale, purchase, distribution, or issuance of any such securities, whether any such activity occurs or allegedly occurs prior to, during, or after such public offering of securities by the **Company**; or

2.  any **Wrongful Act**, relating in any way to any public offering of securities by the **Company**, or to any securities issued, sold or distributed pursuant to any public offering of securities by the **Company**, whether any such **Wrongful Act** occurs or allegedly occurs prior to, during, or after such public offering of securities by the **Company**;



However, this exclusion shall not apply:

1. to any **Claim** arising from an offer, sale or purchase of securities in a transaction that is exempt from registration under the Securities Act of 1933, or any amendments thereto, or any rules and regulations promulgated thereunder;

2. to the extent that such **Claim** is made by a security holder of the **Company** for the **Company's** failure to undertake or complete an initial public offering or sale of the **Company's** securities; or

3. for any **Wrongful Act** relating to a **Company's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Company** and its **Executive Officers** via any medium, in connection with such public offering, if such offering does not occur.

## MANAGEMENT LIABILITY - PART 6
## COMMON CONDITIONS

### A. LIMITS OF LIABILITY

Regardless of the number of **Insureds** involved or **Claims** made, the **Insurer's** liability under this Policy is limited as follows:

1. TOTAL AGGREGATE LIMIT OF LIABILITY

   The amount as specified in Item 4 of the Declarations shall be the **Insurer's** maximum aggregate liability for all **Loss**, covered under all **Coverage Parts** combined.

2. COVERAGE PART LIMIT OF LIABILITY

   a. The respective Limit of Liability for each **Coverage Part**, as specified in Item 5 of the Declarations, shall be the **Insurer's** maximum aggregate liability for all **Loss** covered under such **Coverage Part**.

   b. In the event coverage is available for a **Claim** under more than one **Coverage Part**, then the largest applicable remaining Limit of Liability under only one of the applicable **Coverage Parts**, at the time the **Claim** is first made, shall apply.

   c. The Limit of Liability for each **Coverage Part** shall be part of, and not in addition to, the Total Aggregate Limit of Liability as specified in Item 4 of the Declarations.

3. DEFENSE COSTS WITHIN LIMIT OF LIABILITY

   **Defense Costs** are part of, and not in addition to, the **Applicable Limit of Liability** and the payment by the **Insurer** of **Defense Costs** reduces the **Applicable Limit of Liability**.

If the Total Aggregate Limit of Liability set forth in Item 4 of the Declarations or the applicable Coverage Part Limit of Liability set forth in Item 5 of the Declarations is exhausted by payment of **Loss**, the **Insurer's** obligation to pay **Loss**, including without limitation its duty to defend, will be completely fulfilled and extinguished. The **Insurer** is entitled to pay **Loss** as it becomes due and payable, without consideration of other future payment obligations.

### B. DEFENSE AND SETTLEMENT

1. The **Insurer** shall have the right and duty to defend any **Claim** for **Damages** covered by this Policy, which is first made against the **Insured** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy, even if the allegations are groundless, false or fraudulent. The **Insurer** shall have the right to select defense counsel. The **Insurer** shall have no obligation to provide **Defense Costs** for any **Claim** for damages not covered by this Policy.

2. Each **Insured** agrees to cooperate with the **Insurer** in the defense, investigation and settlement of any **Claim**. Upon the **Insurer's** request, the **Insured** shall submit to examination or questioning, attend hearings, depositions, and trials and assist in effecting settlement, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits, mediations or similar proceedings. Each **Insured** shall assist the **Insurer** in effecting any rights of indemnity, contribution or apportionment available to any **Insured** or the **Insurer**. The **Insured** shall do nothing to prejudice the **Insurer's** position or its potential or actual rights of recovery.

3. The **Insurer's** right and duty to defend any **Claim** shall end when the Total Aggregate Limit of Liability set forth in Item 4 of the Declarations or the applicable Coverage Part Limit of Liability set forth in Item 5 of the Declarations has been exhausted by payment of **Loss**, or has been tendered to, or on behalf of, the **Insured**, or to a court of competent jurisdiction. In such case, the **Insurer** shall have the right to withdraw from the defense, payment, or settlement of any **Claim** by tendering control of such **Claim** to the **Insured**. The **Insured** agrees to accept such tender.



4.  The **Insured** agrees not to offer to settle, or to settle any **Claim**, incur any expense or **Defense Costs** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with regard to any **Claim** without the **Insurer's** prior written consent, which will not be unreasonably withheld. The **Insurer** shall not be liable for any offer to settle, settlement, expense, **Defense Costs**, assumed obligation, admission, judgment or stipulated judgment to which it has not given its prior consent.

5.  The **Insurer** may, with the consent of the **Insured** which will not be unreasonably withheld, make any settlement of any **Claim** covered under this Policy that the **Insurer** deems expedient.

## C. RETENTION

The **Insurer** shall only be liable for those amounts payable as **Loss** which are in excess of the applicable Retention under the subject **Coverage Part** as specified in Item 5 of the Declarations. The Retention shall apply separately to each **Claim** and shall be paid by the **Insured**.

The **Insured** shall promptly make direct payments within the Retention to the appropriate parties as designated by the **Insurer**. The **Insurer** shall have no obligation to make payments within the Retention. If the **Insured** fails to pay the Retention and the **Insurer** brings suit to collect such amounts, then the **Insureds** responsible to pay such amounts shall pay the legal fees, costs, and expenses incurred by the **Insurer** to collect such amounts.

If a single **Claim** is covered in whole or in part under more than one **Coverage Part**, the applicable Retention under each such **Coverage Part** shall be applied with regard to coverage for such **Claim**; provided, however, that the sum of all applicable Retentions under all such applicable **Coverage Parts** shall not exceed the largest applicable Retention.

In the event a **Claim** is fully and finally resolved with respect to all **Insureds**, without any **Damages** being paid on account of such **Claim**, the **Insurer** shall reimburse the **Insured** for any amounts paid within the Retention for such **Claim**.

## D. REPORTING AND NOTICE REQUIREMENTS

As a condition precedent to coverage under this Policy, the **Insured's** duties in the event of a **Claim** are as follows:

1.  If a **Claim** is made against an **Insured**, the **Insured** must give written notice to the **Insurer** as soon as practicable after the Chief Executive Officer, Chief Financial Officer or General Counsel (or the foreign or domestic equivalent of such positions) becomes aware of such **Claim**, but in no event later than 60 days after the end of the **Policy Period**. The **Insured** shall immediately forward to the **Insurer** every demand, notice, summons, or other process received by any **Insured**.

2.  If, during the **Policy Period**, or an Extended Reporting Period if applicable, an **Insured** becomes aware of any fact, circumstance, or situation, which may reasonably be expected to give rise to a **Claim** against any **Insured**, and gives written notice to the **Insurer** during the **Policy Period**, or an Extended Reporting Period if applicable, then any **Claim** subsequently made against an **Insured** arising out of such fact, circumstance or situation shall be deemed to have been made when written notice was first received by the **Insurer**. Written notice under this paragraph shall include the specific fact, circumstance or situation with full particulars as to dates, injury or damage that may result, and persons and entities involved.

## E. CANCELLATION

This Policy may be canceled by the **Named Insured** by providing advance written notice to the **Insurer** stating when thereafter such cancellation shall be effective. If this Policy is canceled by the **Named Insured**, earned premium shall be computed pro rata.

This Policy may be canceled by the **Insurer** only for non-payment of any premium when due. The **Insurer** shall provide written notice to the **Named Insured** at least 10 days prior to the effective date of cancellation. The notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. If the **Insurer** cancels, earned premium shall be computed pro rata.

## F. NON-RENEWAL

The **Insurer** shall not be required to renew this Policy; however, the **Insurer** shall send notice of the **Insurer's** intent not to renew this Policy, to the **Named Insured**, at least 60 days prior to expiration of the **Policy Period**.

## G. EXTENDED REPORTING PERIOD COVERAGE

In the event of cancellation or non-renewal of this Policy by either the **Named Insured** or the **Insurer**, for reasons other than nonpayment of premium, the **Named Insured** shall have the right to an Extended Reporting Period as follows:

1.  AUTOMATIC EXTENDED REPORTING PERIOD COVERAGE

    Without any additional premium being required, coverage as provided under this Policy shall automatically continue for a period of 60 days following the effective date of cancellation or non-renewal, but only with



respect to **Claims** for **Wrongful Acts** fully occurring prior to the effective date of such cancellation or non-renewal and otherwise covered by this Policy and only if there is no other policy that would otherwise provide insurance for such **Wrongful Act**. This 60 day period shall be referred to as the Automatic Extended Reporting Period. The Automatic Extended Reporting Period shall not increase or reinstate the limits of liability and shall not be available if the Retention or other amounts owed the **Insurer** have not been paid.

2.  SUPPLEMENTAL EXTENDED REPORTING PERIOD COVERAGE

    The **Named Insured** shall have the right to purchase an optional Supplemental Extended Reporting Period for reporting **Claims** made against any **Insured** under this Policy upon payment of the additional premium as specified in Item 6 of the Declarations.

    If the **Named Insured** purchases the Supplemental Extended Reporting Period, the coverage shall apply only to **Claims** for **Wrongful Acts** fully occurring prior to the date of cancellation or non-renewal and otherwise covered by this Policy and which are first made against any **Insured** and reported to the **Insurer** during the Supplemental Extended Reporting Period.

    a.  The right to purchase the Supplemental Extended Reporting Period is subject to the following conditions:

        1.  any Retention or other amounts owed the **Insurer** have been paid;

        2.  the **Insureds** have complied with all terms and conditions of the Policy;

        3.  the **Named Insured** must send written notice to the **Insurer** of the intention to purchase the Supplemental Extended Reporting Period accompanied by the additional premium. Written notice and premium payment must be received by the **Insurer** within 60 days of cancellation or nonrenewal or the right to purchase the Supplemental Extended Reporting Period shall terminate.

        4.  the Supplemental Extended Reporting Period does not increase or reinstate the limits of liability or extend the **Policy Period**.

    b.  Any **Claim** made during the Supplemental Extended Reporting Period shall be deemed to have been made during the **Policy Period**. The entire premium for the Supplemental Extended Reporting Period shall be deemed to be fully earned at the inception of the Supplemental Extended Reporting Period.

H.  OTHER INSURANCE

This Policy shall be specifically excess over any applicable Retention. This Policy shall also be specifically excess over, and shall not contribute with, any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess (except insurance specifically excess of this Policy), contingent or otherwise.

If two or more policies of insurance issued by the **Insurer** or any of its affiliated companies apply to the same claim, the **Insurer** shall not be liable for any amount greater than the Limit of Liability of the policy which has the highest applicable Limit of Liability. If the Limit of Liability on each policy is the same, only one limit will apply.

With specific respect to any **Employee** that is a temporary or leased worker, or independent contractor, this Policy shall be specifically excess of any indemnification or insurance, otherwise available to such temporary or leased worker or independent contractor, from any source.

If any **Loss** arising out of any covered **Claim** made against any **Insured Person** in an **Outside Capacity** is indemnified by an **Outside Entity** or any other entity other than the **Company**, then, subject to this Policy's terms, conditions and exclusions, this Policy shall cover such **Loss**, but only to the extent that the amount of such **Loss** is in excess of the amount of any insurance from such **Outside Entity** or any entity other than the **Company**.

The **Insured** agrees that it will use its best effort to promptly enforce any and all rights any **Insured Person** has to indemnification by any entity other than the **Company**.

I.  SUBROGATION

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured's** rights of recovery, including without limitation, any right of recovery from the **Company** for **Loss** incurred by an **Insured Person** that is indemnifiable by the **Company**. The **Insured** shall execute all papers required and do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of the **Insured**.

In any subrogation claim against the **Company** to enforce an **Insured Person's** right of indemnification, the articles of association, bylaws, charter, resolutions and other organizational documents of the **Company** shall be deemed to provide indemnification to the fullest extent permitted by law, and the **Insurer's** recovery from the **Company** for such **Loss** shall not exceed the Retention applicable to the **Company** for such **Loss**.



The **Insurer** shall have no right of recourse against any **Insured Person** with respect to any amounts paid under the Fiduciary Coverage (Part 3), if the premium for this Policy, or any portion thereof, was purchased by or on behalf of any **Insured Person** who is serving as a past, present, or future trustee of a **Plan**.

Further, and notwithstanding the foregoing, the **Insurer's** rights of recovery are subordinate to that of the **Insured**. This applies to not only **Loss** in excess of the Limits of Liability, but also the reimbursement of any applicable Retention.

However, the **Insurer** shall not exercise its right of subrogation against any **Insured Person** unless it has been established by a final and non-appealable judgment, or guilty plea in a criminal proceeding, that such **Insured Person** committed conduct that is uninsured pursuant to Common Exclusions (Part 5), A or B.

J.   ALLOCATION

If both **Loss** covered by this Policy and loss not covered by this Policy are incurred as a result of a **Claim**, the **Insured** and the **Insurer** shall use their best efforts to allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters; provided, however, that one hundred percent (100%) of any such **Defense Costs** shall be allocated to covered **Loss** if and to the extent such **Defense Costs** are incurred by the covered **Insured** and are, in part, covered by this Policy and, in part, not covered by this Policy because the **Claim** against the **Insured** includes both covered and uncovered matters.

K.   ASSIGNMENT

Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

L.   AUTHORIZATION

It is agreed the **Named Insured** shall act on behalf of all **Insureds** with respect to giving or receiving notice of cancellation or non-renewal, payment of premiums, receiving of any return premiums, exercising or declining the right to purchase Supplemental Extended Reporting Period Coverage and agreeing to any changes in this Policy.

M.   ACTION AGAINST THE INSURER

1.   No action shall lie against the **Insurer** unless, as a condition precedent thereto, the **Insureds** have fully complied with all terms of this Policy and until the amount of the **Insureds'** obligations to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Named Insured**, all claimants and the **Insurer**.

2.   Nothing contained in this Policy shall give any person or organization any right to join the **Insurer** as a party in any action against any **Insured** to determine any **Insured's** liability.

N.   BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or of any **Insured's** estate shall not relieve the **Insurer** of any of its obligations hereunder.

O.   CHANGES IN STATUS OF ENTITY

1.   CHANGE IN CONTROL

If there is a **Change In Control**, coverage will continue until the end of the **Policy Period**, but only with regard to **Claims** first made against the **Insured** during the **Policy Period**, and reported to the **Insurer** as soon as practicable during the **Policy Period** or within 60 days thereafter, for **Wrongful Acts** occurring prior to the effective date of the **Change In Control**. If and when there has been a **Change In Control**, the premium shall be deemed to be fully earned and the **Policy Period** shall remain unaltered.

2.   NEW ENTITY

a.   If during the **Policy Period** the **Company** acquires or creates a new entity that it owns, directly or indirectly, more than fifty percent (50%) of the voting stock or voting rights thereof, coverage under this Policy shall automatically apply to: (i) such new entity; (ii) such new entity's subsidiaries; and (iii) such new entity's subsidiaries' directors, officers, trustees and employees; but only with regard to **Claims** that allege **Wrongful Acts** committed after such acquisition or creation.

b.   However, if the total assets of such newly acquired or created entity exceeds fifty percent (50%) of the total assets of the **Named Insured** as reflected in the **Named Insured's** most recent audited consolidated financial statements; or the combined total number of all **Company** employees increases by more than fifty percent (50%) as an immediate result of such acquisition or creation; then coverage under this Policy will apply only if the **Insurer** agrees to afford such coverage pursuant to paragraph 2. c. below.



c. The **Insurer** may agree to extend the coverage described in paragraph 2. b. above to the new entities and persons described in paragraph 2. a. above if, within 60 days after the acquisition or creation, the **Named Insured** provides any additional information, pays any additional premium and agrees to any additional terms, conditions and/or exclusions reasonably required by the **Insurer** for such extension of coverage.

d. There will be no coverage under this Policy for any **Wrongful Act** by any person considered to be a covered **Insured Person** pursuant to paragraph 2. a. above where such **Wrongful Act** occurred, in whole or in part before the effective date of such acquisition or creation, or for any **Wrongful Act** occurring on or after such date which, together with any **Wrongful Act** occurring before such date, would constitute **Interrelated Wrongful Acts**.

3. GUARANTEED QUOTE FOR OFFERING OF SECURITIES

If during the **Policy Period** the **Insureds** prepare and file an offering statement with the United States Securities and Exchange Commission or file a registration statement for a public offering with the United States Securities and Exchange Commission, the **Insurer** shall offer a quotation for coverage subject to such terms, conditions and additional premium as the **Insurer** may require.

P. ECONOMIC OR TRADE SANCTION

If coverage for a **Claim** under this Policy is in violation of any economic or trade sanction, including, but not limited to, any sanction administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC), then coverage for such **Claim** shall be deemed null and void.

Q. HEADINGS

The titles and headings to the **Coverage Parts**, Common Definitions, Common Exclusions, Common Conditions, Clauses, Sub-Clauses, endorsements of this Policy, and the schedule of endorsements attached to this Policy, are included solely for ease of reference and do not in any way limit, expand or otherwise affect coverage available under this Policy.

R. APPLICATION REPRESENTATIONS

The **Application** is the basis of this Policy and is incorporated in and constitutes a part of this Policy. The **Application** shall be deemed to be attached to this Policy as if physically attached. The **Insureds** agree that the statements within the **Application** are accurate and complete and that this Policy is issued in reliance upon the accuracy and completeness of such representations.

With respect to such representations, no knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for purposes of determining the availability of coverage under this Policy; provided however, the **Insureds** agree that in the event of any material misstatement, misrepresentation or omission in the **Application**, no coverage will be afforded under this **Policy** for any **Claim** based upon or arising out of the information that was not accurately or completely disclosed with respect to:

1. any **Insured Person** who knew, as of the inception date of this Policy, the facts that were not accurately or completely disclosed;

2. the **Company** under Insuring Agreement B. of the Directors & Officers Coverage (Part 1) for the indemnification of any **Insured Person** who knew, as of the inception date of this Policy, the facts that were not accurately or completely disclosed;

3. the **Company** if any **Insured Person** who is or was Chief Executive Officer, Chief Financial Officer or General Counsel (or the foreign or domestic equivalent of such positions) of the **Company** knew, as of the inception date of this Policy, the facts that were not accurately or completely disclosed.

S. NON-RESCISSION

This Policy shall not be rescinded by the **Insurer**; provided that nothing herein shall limit or waive any other rights or remedies available under the Policy or applicable law.

T. GLOBAL LIBERALIZATION

If a **Claim**, or a portion of a **Claim**, is subject to a jurisdiction other than the jurisdiction of the United States of America its territories or possessions, and the application of such jurisdictional law would result in a coverage determination under this Policy that is less favorable to the **Insured** than the **Insured** would receive had the issue been subject to the U.S. Jurisdiction, to the greatest extent legally permissible, the **Insurer** shall apply the U.S. Jurisdictional law that would otherwise apply to such coverage determination.



## U. REPRESENTATIVES

Coverage under each **Coverage Part**, subject to its terms, shall be extended to apply to **Loss** resulting from a **Claim** for a **Wrongful Act** of an **Insured Person** made against:

1.  a natural person who, at the time the **Claim** is made, is the lawful spouse or domestic partner of such **Insured Person**, provided that such **Claim** arises solely out of such person's status as the spouse or domestic partner of such **Insured Person**; or seeks recovery from marital community property, other property jointly held by the spouse or domestic partner and such **Insured Person**, or property transferred from such **Insured Person** to the spouse or domestic partner; or

2.  the estate, heir, legal representative or assigns of an **Insured Person**, in the event of such **Insured Person's** death, incompetency, insolvency or bankruptcy; but solely with respect to a **Wrongful Act** fully occurring prior to such **Insured Person's** death, incapacity or bankruptcy and only to the extent that such **Insured Person** would otherwise be covered by this Policy.

There shall be no coverage extended under this Policy for **Loss** resulting from any **Claim** arising from any act, error, or omission of any spouse, domestic partner, estate, heir, legal representative or assigns of any **Insured Person**.

## V. VALUATION

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the U.S. If a judgment is rendered, a settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than U.S. dollars, payment under this Policy will be made in U.S. dollars at the rate of exchange as published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon, or the other element of **Loss** is due, respectively.

## W. TERRITORY

Coverage under this Policy shall, to the extent legally permitted, extend to **Wrongful Acts** taking place, **Loss** incurred, or **Claims** made anywhere in the world.

## X. SERVICE OF SUIT CLAUSE

The **Insurer** appoints the highest state official in charge of insurance affairs (Commissioner of Insurance, Director of Insurance, Insurance Commissioner, Executive Secretary, Superintendent of Insurance, or such other official title as designated by the state) of the **Insured's** domiciliary state and his/her successor or successors in office as his/her and their duly authorized deputies, as the **Insurer's** true and lawful attorney in and for the aforesaid state, upon whom all lawful process may be served in any action, suit or proceeding instituted in the **Insured's** domiciliary state by or on behalf of any **Insured** or beneficiary against the **Insurer** arising out of this Policy, provided a copy of any process, suit, complaint or summons is sent by certified or registered mail to:

Robert Kuzloski
Legal Department
StarStone US Companies
412 Mt. Kemble Avenue, Suite G-60,
Morristown, New Jersey 07960
Tel: (917) 704-6008
Email: Robert.Kuzloski @corespecialty.com

IN WITNESS WHEREOF, the **Insurer** has caused this Policy to be signed by its President and Secretary, and, if required by state law, this Policy will not be valid unless countersigned by a duly authorized representative of the **Insurer**.

_____        _____
President                                                            Secretary

**Named Insured:**  Joy Construction Corp                  **Policy No:**  83468Q220ASP

**Endorsement No:**  1                                      **Effective Date:**  December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Policy Form Schedule

It is agreed that:

1.  Item 7. Forms and Endorsements of the Declarations of this Policy is amended by the addition of the following:

    Item 7.  Forms and Endorsements:

| FORM NO.: | ENDORSEMENT NAME: |
|---|---|
| SSS-MPL-ML-DEC (03-21) | PRIVATE ML LIABILITY INS POLICY DECLARATIONS |
| SSS-MPL-ML-END-CW-001 (10-16) | POLICY FORM SCHEDULE |
| SSS-MPL-ML-GTC (03-21) | PRIVATE MGMT LIABILITY INS POLICY |
| SSS-MPL-ML-END-CW-101 (10-16) | EMPLOYED LAWYERS COVERAGE - PRIVATE D&O COVERAGE PART |
| SSS-MPL-ML-END-CW-102 (10-16) | IMMIGRATION PRACTICES COVERAGE - PRIVATE D&O COVERAGE PART |
| SSS-MPL-ML-END-CW-105 (10-16) | PROFESSIONAL SERVICES EXCLUSION - DO COVERAGE PART |
| SSS-MPL-ML-END-CW-123 (10-16) | AMENDED HIPAA AND PPACA COVERAGE LIMIT |
| SSS-MPL-ML-END-CW-127 (10-16) | AMENDED DEFINITION OF DAMAGES- FINES AND PENALTIES COVERAGE |
| SSS-MPL-ML-END-CW-206 (10-16) | IMMIGRATION PROCEEDING COVERAGE ENDORSEMENT |
| SSS-MPL-ML-END-CW-404 (10-16) | DEFINITION OF SUBSIDIARY EXPANDED-NAMED ENTITY |
| SSS-MPL-ML-END-CW-526 (10-16) | SEXUAL & PHYSICAL ABUSE EXCLUSION |
| SSS-MPL-ML-END-CW-527 (10-16) | SPECIFIC MATTER EXCLUSION |
| SSS-MPL-ML-END-CW-566 (10-16) | PRIVACY COLLECTION AND DISCLOSURE EXCLUSION |
| SSS-MPL-ML-END-CW-573 (10-16) | CLAIM BY SPECIFIC PERSON EXCLUSION |
| SSS-MPL-ML-END-CW-902 (10-16) | AMENDED PENDING AND PRIOR LITIGATION DATE FOR INCREASED LIMITS |
| SSS-NOT-CW-01 (10-16) | TERRORISM NOTICE |

**Named Insured:** Joy Construction Corp                    **Policy No:** 83468Q220ASP

**Endorsement No:** 2                                        **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Employed Lawyers Coverage

It is agreed that:

1. Solely with respect to the coverage provided by this endorsement, section O. **Insured Person** of the Common Definitions (Part 4) of this Policy is amended by the addition of the following:

   O. **Insured Person** means:

      1. Solely with respect to the Directors & Officers Coverage (Part 1); any past or present **Employed Lawyer**.

2. Solely with respect to the coverage provided by this endorsement, section III. Definitions of the Directors & Officers Coverage (Part 1) of this Policy is amended by the addition of the following:

   **Employed Lawyer** means any natural person who provides legal services as an attorney, but only if such services are performed for the **Company**, and in the **Insured Person's** capacity as an employee of the **Company**. Such legal services shall include pro bono legal services rendered by an **Employed Lawyer** with the prior written consent of the **Company**, but only if such service is for:

      1. an indigent client; or

      2. a non-profit public interest group.

3. Solely with respect to the coverage provided by this endorsement, section III. Definitions A. **Claim** of the Directors & Officers Coverage (Part 1) of this Policy is amended by the addition of the following:

   A. **Claim** shall also include a State Bar proceeding that is commenced by the filing or service, whichever is earlier, of a complaint, the filing of a criminal information or indictment, or similar document, including any foreign equivalent thereof, by reason of a **Wrongful Act**;

4. Solely with respect to the coverage provided by this endorsement, section III. Definitions J. **Wrongful Act** of the Directors & Officers Coverage (Part 1) of this Policy is deleted in its entirety and replaced with the following:

   J. **Wrongful Act** means any actual or alleged act, error or omission arising from legal services performed by an **Employed Lawyer**.

5. Solely with respect to the coverage provided by this endorsement, section G. **Damages** of the Common Definitions (Part 4) of this Policy is amended by the addition of the following:

   G. **Damages** shall also include any fine or penalty awarded against an **Insured Person** as a result of a State Bar Proceeding;

6. Solely with respect to the coverage provided by this endorsement, the **Insurer's** maximum aggregate liability for all **Loss** arising from any and all **Claims** arising from a **Wrongful Act** shall not exceed $1,000,000. Such amounts shall be in excess of the Employed Lawyer Liability Retention specified below, and shall be part of, and not in addition to, the Directors & Officers Coverage Part Limit of Liability as specified in Item 5 of the Declarations.

| Coverage Part | | Each **Claim** Retention |
|---|---|---|
| Directors & Officers | **Employed Lawyer Liability** | $50,000 |

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Named Insured:** Joy Construction Corp        **Policy No:** 83468Q220ASP

**Endorsement No:** 3        **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Immigration Practices Coverage

It is agreed that:

1. Section IV. Exclusions of the Directors & Officers Coverage (Part 1) of this Policy is amended by the addition of the following:

   The **Insurer** shall not be liable under this Directors & Officers Coverage (Part 1) to pay any **Loss** arising from any **Claim** made against any **Insured**:

   A.A. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Immigration Reform Control Act of 1986 or any other similar federal, state, local or foreign statutory law or common law that governs the same topic or any rule, regulation and amendment thereto;

   Nothwithstanding the foregoing, the **Insurer** shall pay **Defense Costs** arising from any **Claim** by reason of a **D&O Wrongful Act**, first made during the **Policy Period** and reported in writing to the **Insurer** during the **Policy Period** or within 60 days thereafter, and otherwise excluded by Exclusion A.A. above. Such **Defense Costs** shall not exceed a maximum aggregate limit of liability of $100,000 per **Policy Period**.

   Such **Defense Costs** shall be in excess of the applicable Retention that correlates with the Directors & Officers Coverage Part as specified in Item 5 of the Declarations, and shall be part of, and not in addition to, the Directors & Officers Coverage Part Limit of Liability as specified in Item 5 of the Declarations.

**Named Insured:** Joy Construction Corp                    **Policy No:** 83468Q220ASP

**Endorsement No:** 4                                       **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
## Professional Services Exclusion

It is agreed that:

1.  Section IV. Exclusions M. of the Directors & Officers Coverage (Part 1) is deleted in its entirety and replaced with the following:

    The **Insurer** shall not be liable under this Directors & Officers Coverage (Part 1) to pay any **Loss** arising from any **Claim** made against any **Insured**:

    M.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the **Insured's** performance of, or failure to perform, professional services for others.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Named Insured:** Joy Construction Corp          **Policy No:** 83468Q220ASP

**Endorsement No:** 5          **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
## AMENDED HIPAA AND PPACA COVERAGE LIMIT

It is agreed that:

1.  Section II. Extensions D. of the Directors & Officers Coverage (Part 1) of this Policy is deleted in its entirety and replaced with the following:

    D.  HIPAA AND PPACA COVERAGE

    The **Insurer** shall pay on behalf of the **Insured**, any **Health Act Penalty** arising from a **Health Act Notice** first received by the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter; provided, however, the **Insured** shall not make any payment, admit liability or stipulate to any **Health Act Penalty** without the **Insurer's** prior written consent.

    Any payment by the **Insurer** pursuant to this section II. D. shall be considered part of **Damages**, shall be excess of the applicable Retention under the Directors & Officers Coverage Part as specified in Item 5 of the Declarations, and shall be part of, and not in addition to, the **Applicable Limit of Liability**. The amount payable by the **Insurer** pursuant to this section II. D. shall not exceed a maximum aggregate limit of $250,000 per **Policy Period**.

    In the event both the Directors & Officers Coverage (Part 1) and the Fiduciary Coverage (Part 3) are purchased, coverage as provided for in this section II. D. shall not be available under this Directors & Officers Coverage (Part 1).

2.  Section II. Extensions A. of the Fiduciary Coverage (Part 3) of this Policy is deleted in its entirety and replaced with the following:

    A.  HIPAA AND PPACA COVERAGE

    The **Insurer** shall pay on behalf of the **Insured**, any **Health Act Penalty** arising from a **Health Act Notice** first received by the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter; provided, however, the **Insured** shall not make any payment, admit liability or stipulate to any **Health Act Penalty** without the **Insurer's** prior written consent.

    Any payment by the **Insurer** pursuant to this section II. A. shall be considered part of **Damages**, shall be excess of the applicable Retention under the Fiduciary Coverage Part as specified in Item 5 of the Declarations, and shall be part of, and not in addition to, the **Applicable Limit of Liability**. The amount payable by the **Insurer** pursuant to this section II. A. shall not exceed a maximum aggregate limit of $250,000 per **Policy Period**.

**Named Insured:** Joy Construction Corp        **Policy No:** 83468Q220ASP
**Endorsement No:** 6                            **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### SUB-LIMIT FOR CIVIL PENALTIES: SECTION 4975 AND 502C

It is agreed that:

1.  Solely with respect to the Fiduciary Coverage (Part 3**)** of this Policy:

    Section Part 4, Common Definitions G. **Damages** of this Policy is amended by the addition of the following:

    G.  **Damages** shall also include **Section 4975 Penalties** and **Section 502(c) Penalties**, if insurable under the law pursuant to which this Policy is construed.

2.  Section III. Definitions of the Fiduciary Coverage (Part 3) of this Policy is amended by the addition of the following:

    **Section 4975 Penalties** means the 15% or less civil penalties imposed upon an **Insured** for inadvertent violations under Section 4975 of the Internal Revenue Code of 1986, arising from or relating to a covered award or judgment.

    **Section 502(c) Penalties** means the civil penalties imposed upon an **Insured** for inadvertent violations under Section 502(c) of **ERISA**, other than penalties under the Pension Protection Act.

3.  Any payment by the **Insurer** pursuant to the coverage provided by this endorsement shall not exceed a maximum aggregate limit of $250,000 per **Policy Period** and shall be part of, and not in addition to, the **Applicable Limit of Liability**.

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Named Insured:** Joy Construction Corp        **Policy No:** 83468Q220ASP

**Endorsement No:** 7        **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Immigration Proceeding Coverage Endorsement

It is agreed that:

I.   Section II. Definitions, A. **Claim** of the Employment Practices Coverage (Part 2) of this Policy is amended by the addition of the following:

    **Claim** includes any investigation of any **Insured** by a governmental agency solely with respect to a violation of the Immigration Reform and Control Act of 1986, including any amendments thereto or any similar provision of any federal, state, local or foreign regulation, statute, rule or law.

II.   Any payment(s) by the **Insurer** pursuant to the coverage provided by this endorsement:

    a.   shall not exceed a maximum aggregate limit of $100,000 per **Policy Period**;

    b.   shall be excess of a $100,000 Retention; and

    c.   shall be part of, and not in addition to, the **Applicable Limit of Liability**.

*Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.*
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Named Insured:** Joy Construction Corp                **Policy No:** 83468Q220ASP
**Endorsement No:** 8                                     **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Definition of Subsidiary Expanded – Named Entity

It is agreed that:

1.  Section Part 4 Common Definitions W. **Subsidiary** of this Policy is amended by the addition of the following:

    W.    **Subsidiary** also means the entity specified below:

    **Entity**

    Joy Management YYY Corp.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Named Insured:** Joy Construction Corp       **Policy No:** 83468Q220ASP

**Endorsement No:** 9       **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Sexual & Physical Abuse Exclusion

It is agreed that:

1. Section Part 5 Common Exclusions of this Policy is amended by the addition of the following:

In addition to the Exclusions listed in the **Coverage Parts**, the **Insurer** shall not be liable under this Policy to pay any **Loss** arising from any **Claim** made against any **Insured**:

1. SEXUAL & PHYSICAL ABUSE

based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

a. sexual abuse;

b. physical abuse;

c. licentious, immoral or sexual behavior intended to lead to or culminate in any sexual act; or

d. transmission of any communicable disease;

whether caused by or at the instigation of, or at the direction of, or omission by, any person or cause whatsoever;

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Named Insured:** Joy Construction Corp                    **Policy No:** 83468Q220ASP
**Endorsement No:** 10                                      **Effective Date:** December 07, 2022

### PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Specific Matter Exclusion

It is agreed that:

1.  Section Part 5 Common Exclusions of this Policy is amended by the addition of the following:

    In addition to the Exclusions listed in the **Coverage Parts**, the **Insurer** shall not be liable under this Policy to pay any **Loss** arising from any **Claim** made against any **Insured**:

    1.  SPECIFIC MATTER

        based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or matter described or cited in:

        All claims listed on the Hanover Insurance Loss Runs dated October 28, 2021

        or, any of the same or substantially similar fact, circumstance, situation, transaction, event or matter;

**Named Insured:** Joy Construction Corp                    **Policy No:** 83468Q220ASP

**Endorsement No:** 11                                       **Effective Date:** December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
## PRIVACY, COLLECTION AND DISCLOSURE EXCLUSION

It is agreed that:

1.  Section Part 5, Common Exclusions of this Policy is amended by the addition of the following:

    In addition to the Exclusions listed in the **Coverage Parts**, the **Insurer** shall not be liable under this Policy to pay any **Loss** arising from any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

    a.  access to or disclosure of, any organization's or person's confidential or personal information, including but not limited to patents, copyrights, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information;

    b.  unauthorized collection of information by any **Insured** or the failure to provide adequate and legal notice that such information is being collected;

    c.  violation of any federal, state, local or foreign regulation, statute, rule or law:

        1.  that requires commercial entities that collect personal information to post privacy policies, adopt specific privacy or security controls, or provide notification to individuals in the event personal information has been compromised or potentially compromised; or

        2.  limiting or prohibiting facsimile, electronic mail or any other means of communication, including but not limited to, the Telephone Consumer Protection Act 47 U.S.C. Section 227, CAN-SPAM Act of 2003, or any similar Federal Communications Commission regulation or similar provision of any federal, state, local or foreign regulation, statute, rule or law;

    d.  access to, theft of, or use of an **Insured's** computer hardware, software, web site, electronic systems, network or programs by an unauthorized person or entity, or access by an authorized person in an unauthorized manner, or the transmission or receipt of unauthorized, corrupting, or harmful computer code, including but not limited to adware, cookies, viruses, spyware, Trojan horses, logic bombs or worms.

**Named Insured:** Joy Construction Corp                    **Policy No:** 83468Q220ASP

**Endorsement No:** 12                    **Effective Date:** December 07, 2022

### PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
### Claim By Specific Person Exclusion

It is agreed that:

1.  Section Part 5 Common Exclusions of this Policy is amended by the addition of the following:

    In addition to the Exclusions listed in the **Coverage Parts**, this Policy shall not apply to any matter or **Claim** brought or maintained by, on behalf of, or in the right of any Specific Person.

2.  For purposes of this endorsement, Specific Person shall mean Rebecca Park.

Named Insured:  Joy Construction Corp

Policy No:  83468Q220ASP

Endorsement No:  13

Effective Date:  December 07, 2022

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE
## AMENDED PENDNG & PRIOR LITIGATION DATE FOR INCREASED LIMITS

It is agreed that:

1.  Solely with respect to the Coverage Parts noted with an "X" in the Schedule below, the Pending & Prior Litigation Date section of Item 5 of the Declarations is deleted and replaced with the following:

| SCHEDULE | | | | |
|---|---|---|---|---|
| Coverage Parts Noted with An "X": | Original Limit of Liability | Pending & Prior Litigation Date: Original Limit of Liability | Increased Limit of Liability | Pending & Prior Litigation Date: Increased Limit of Liability |
| **<x> Directors & Officers** | $1,000,000 | | $1,000,000 excess of $1,000,000 | |
| A. Insuring Agreement A-Insured Person Liability | | Nov 07, 2015 | | Dec 07, 2021 |
| B. Insuring Agreement B-Private Company Indemnification | | Nov 07, 2015 | | Dec 07, 2021 |
| C. Insuring Agreement C-Private Company Liability | | Nov 07, 2015 | | Dec 07, 2021 |
| | | | | |
| **<x> Fiduciary** | $1,000,000 | Nov 14, 2019 | $1,000,000 excess of $1,000,000 | Dec 07, 2021 |

2.  Section Part 4, Common Definitions T. **Pending & Prior Litigation Date** of this Policy is deleted in its entirety and replaced with the following:

   T.  **Pending & Prior Litigation Date** means:

   1.  with respect to the applicable Original Limit of Liability specified in the Schedule above, the applicable date, if any, specified in the Schedule above under the heading "Pending & Prior Litigation Date: Original Limit of Liability";

   2.  with respect to the applicable Increased Limit of Liability specified in the Schedule above, the applicable date, if any, specified in the Schedule above under the heading "Pending & Prior Litigation Date: Increased Limit of Liability".

3.  Nothing in this endorsement is intended nor will be construed to increase or amend the Limits of Liability set forth in Item 5 of the Declarations.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

## POLICYHOLDER DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE

You are hereby notified that, under the Terrorism Risk Insurance Act, as amended (the "Act"), this Policy provides coverage for losses arising out of acts of terrorism.  An "act of terrorism" is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the coverage provided by this Policy for losses caused by acts of terrorism may be partially reimbursed by the United States Government under the formula set forth in the Act.  Under this formula, the United States generally reimburses 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion.  If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Your policy includes the terrorism coverage required to be offered by the Act.  Coverage for certified acts of terrorism is still subject to, and may be limited by, all other terms, conditions and exclusions in your policy.  The premium charged for this coverage for the policy period is $0.



### *** PERSONAL & CONFIDENTIAL ***

October 13, 2023

**VIA EMAIL & CERTIFIED MAIL/RRR**

JOY CONSTRUCTION CORPORATION
ATTN: AMNON SHALHOV
ASHALHOV@AOL.COM
40 FULTON STREET, 21ˢᵗ FLOOR
NEW YORK, NEW YORK 10038

**Re:     Our Client: Tanzima Tuli**

Dear Mr. Shalhov:

Please be advised that this firm represents **TANZIMA TULI** in connection with claims of discrimination against **JOY CONSTRUCTION CORPORATION AND DOMINIC (last name unknown)** (individually), (collectively referred to as "Respondents") for, *inter alia*, **sex/gender discrimination, sexual harassment, and hostile work environment**  pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State and City Human Rights Laws, and the Adult Survivor's Act.

Demand is hereby made upon you to preserve the following Electronically Stored Information ("ESI") regarding or relating to Ms. Tuli:

- All videos of every single camera from every single angle in the facility that Ms. Tuli worked in from the start of her employment until today;
- All e-mails sent by or received by Ms. Tuli, and all emails regarding Ms. Tuli sent by or received by you, your employees, outside parties, recruiters, human resources personnel, managers, and colleagues;
- All internal instant messaging communications, text messages or any other electronic messages sent, received, viewed, saved, or opened in any manner by any person that mentions Ms. Tuli, that Ms. Tuli had access to, or that Ms. Tuli was ever provided access to;
- All logs and records of any person or entity who have accessed, had access to, or at any time or place viewed the <u>messages and email accounts</u> of Ms. Tuli;
- All complaints, however made, of discrimination, hostile work environment, retaliation, or wrongful termination against Respondents;
- All e-mails sent or received with regards to Ms. Tuli's complaint(s) of discrimination and/or discriminatory treatment;

New York City Office: One Penn Plaza, Suite 4905, New York, NY 10119 | (212) 587-0760
Philadelphia Office: 1845 Market Street, Suite 2950, Philadelphia, PA 19103 | (215) 391-4790
New Jersey Office: 73 Forest Lake Drive, West Milford, NJ 07421 | (973) 388-8625
Miami Office: 701 Brickell Avenue, Suite 3101, Miami, FL 33131 | (305)-946-1884
Website: www.discriminationandsexualharassmentlawyers.com