UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOY CONSTRUCTION CORPORATION,

                Plaintiff,                    24-cv-5078 (PKC)

        -against-                 OPINION AND ORDER

STARSTONE SPECIALTY INSURANCE
COMPANY,

                Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.,

           Plaintiff Joy Construction Corporation ("Joy") initiated this action against

defendant StarStone Specialty Insurance Company ("StarStone") after StarStone declined to

defend and indemnify Joy in connection with a discrimination complaint filed against it with the

Equal Employment Opportunity Commission ("EEOC"). StarStone declined to provide

coverage based on a "Sexual & Physical Abuse Exclusion" (the "Exclusion") included in the

liability insurance policy that it issued to Joy. Joy seeks damages for breach of contract and

declarations that StarStone has duties to defend and indemnify it. StarStone now moves to

dismiss Joy's complaint on the grounds that the Exclusion bars coverage for the discrimination

complaint filed with the EEOC in its entirety. Joy has filed a cross-motion for summary

judgment seeking a declaration that StarStone has a duty to defend it in the EEOC proceeding.

For reasons that will be explained, StarStone's motion to dismiss will be granted and Joy's cross-

motion for summary judgment will be denied as moot.

BACKGROUND

           Unless otherwise noted, the following facts are taken from Joy's complaint and

attached exhibits. (ECF 2; ECF 2-1; ECF 2-2.) For the purposes of StarStone's motion to

dismiss, the Court accepts well-pleaded allegations in Joy's complaint as true and draws all reasonable inferences in Joy's favor.  See Koch v. Christie's Intern. PLC, 669 F.3d 141, 145 (2d Cir. 2012).

Joy provides construction and development services in the New York City area. (ECF 2 ¶ 6.)  StarStone issued a "Private Company Management Liability Insurance" policy to Joy for the period of December 7, 2022, to December 7, 2023 (the "Policy").  (Id. ¶ 7; ECF 2-1 at 2.)  The Policy contains three "Coverage Parts": "Directors & Officers Coverage," "Employment Practices Coverage," and "Fiduciary Coverage."  (ECF 2-1 at 4-13.)  The Employment Practices Coverage Part provides in relevant part:

## I.    INSURING AGREEMENTS

Subject to the terms, conditions and exclusions of this Policy:

A.  EMPLOYMENT PRACTICES LIABILITY INSURANCE

The **Insurer** shall pay on behalf of the **Insured**, **Loss** arising from any **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy.

(Id. at 9; ECF 2 ¶ 17.)  "Loss" means both "Damages" and "Defense Costs."  (ECF 2-1 at 15.)  A "Claim" is defined, among other things, as:

1.  a written demand for monetary, non-monetary or injunctive relief against an **Insured**, by reason of a **Wrongful Act**;

2.  a civil, administrative, regulatory or arbitration proceeding against an **Insured**, by reason of a **Wrongful Act**, which is commenced by service of a complaint or similar document or the filing of a notice of charges;

(Id. at 9; ECF 2 ¶ 17.)  With respect to the above Insuring Agreement A. of the Employment Practices Coverage Part, "Wrongful Act" means any "Employment Wrongful Act," defined as follows:

B.  **Employment Wrongful Act** means any actual or alleged employment-related:

1.  discrimination based upon race, color, religion, age, gender, national origin, sexual orientation, pregnancy, disability or any other basis prohibited by federal, state, or local law;

2.  wrongful dismissal, discharge, or termination of employment, whether actual or constructive;

3.  sexual or workplace harassment including workplace bullying;

4.  violation of employment discrimination laws including any actual or alleged wrongful: deprivation of career opportunity, failure to promote, discipline, evaluation, demotion, denial of tenure, modification of any term or condition of employment; or limitation, segregation or classification of any employee;

5.  retaliation in response to any **Employee** exercising his or her rights under any law;

6.  failure to enforce existing employment-related corporate policies and procedures relating to retention, supervision, hiring or training;

7.  defamation, humiliation, or invasion of privacy;

8.  breach of any verbal, written or implied contract of employment including any contractual obligation arising out of any employee handbook, personnel manual, or policy statement;

by any **Insured** against an **Employee** . . . .

(ECF 2-1 at 9-10; ECF 2 ¶ 17.)

On October 19, 2023, Tanzima Tuli, who had been staffed to work at Joy as a security officer at one of its construction sites, filed a discrimination complaint with the EEOC against Joy.  (ECF 2 ¶¶ 10-11; ECF 2-2 at 2.)  Per the EEOC, a "discrimination complaint" must contain, among other things, "[a] short description of the events that you believe were discriminatory," "[w]hy you believe you were discriminated against (for example, because of your . . . sex . . . .)," and "[a] short description of any injury you suffered."[1]  Tuli, represented by

---

[1] https://www.eeoc.gov/federal-sector/filing-formal-complaint (last accessed June 11, 2025).

counsel, alleges in her discrimination complaint, among other things, that Joy discriminated against her on the basis of her sex and gender and that she was subjected to sexual harassment and a hostile work environment.  (ECF 2 ¶ 12; ECF 2-2 ¶ 1.)  More specifically, Tuli alleges that her supervisor at the construction site made repeated sexual advances towards her beginning around March 2023, including by making sexually-charged remarks about her body, pushing her to have sex with him, and groping her breasts.  (See, e.g., ECF 2-2 ¶¶ 5, 8, 10, 11, 13, 15, 18.)

   For example, she alleges that her supervisor made the following remarks to her during their shifts:

> i.) You are hot; ii.) I like everything about you—I like your body—we should be together we should have fun together; iii.) You have a nice body; iv.) I am attracted to you—you know I like you; we can have fun together; iv.) we can spend the night together then you can go back; v.) if you need something I can pay for that; vi.) Your boobs and ass attract me.

(Id. ¶ 11.)  Tuli adds that in one instance, while she was in her supervisor's office trailer, he told her, "I really want to talk to you—why are you ignoring me—why don't you like me?  I want to make love – I want to be with you.  I want to have fun with you.  You know we need fun . . . ."  (Id. ¶ 13.)  Tuli alleges that in response she told him that she felt uncomfortable, but that he continued to pressure her and asked her to show him her breasts.  (Id.)  Tuli reiterated, "I am not comfortable and I have to go—I have work to do.  The culture I came from, we don't do this— this is uncomfortable."  (Id.)  Despite her objections, Tuli alleges that the supervisor then "came closer" to her, that she "became extremely afraid with her entire body shaking in fear," and that he "proceeded to touch [her] cheeks, shoulder, neck[] and grope [her] breasts."  (Id.)  Tuli "immediately recoiled and pushed [him] off of her and ran out of the trailer."  (Id.)  Following this incident, Tuli alleges that her supervisor continued to pursue her both in-person and over the phone.  (See, e.g., id. ¶¶ 14, 15, 18, 21.)  He told her, among other things, "I want to be with you," "Don't be scared of me," "I want you to be comfortable . . . you're gonna have a good time

you're gonna have fun.  It's nothing bad.  I'm not asking you for anything bad.  It's something that's normal between a man and a woman," "Don't make me beg," and "Make it happen.  Only you can make it happen . . . ."  (Id. ¶¶ 15, 18, 19, 20.)

Tuli further alleges in her discrimination complaint that Joy "unlawfully discriminated against [her] because of her sex, gender, race, color, national origin, and because she complained or opposed the unlawful conduct of [Joy] related to her sex, gender" and that Joy "owed and breached its duty to [her] to prevent the harassment/discrimination/retaliation and is liable therefore for negligence."  (Id. ¶¶ 30, 33; ECF 2 ¶ 14.)  Tuli requests "lost wages, emotional distress, punitive damages, and attorney fees."  (ECF 2-2 ¶ 32.)

On October 20, 2023, Joy provided StarStone with notice of the EEOC complaint filed by Tuli and sought defense and indemnification coverage under the Policy in connection with that proceeding.  (ECF 2 ¶ 16.)  On November 10, StarStone issued a declination letter to Joy denying defense and indemnification coverage based on the Policy's "Endorsement No. 9," which contains a "Sexual & Physical Abuse Exclusion."  (Id. ¶ 21; ECF 2-1 at 31.)  The Exclusion provides:

It is agreed that:

1. Section Part 5 Common Exclusions of this Policy is amended by the addition of the following:

   In addition to the Exclusions listed in the **Coverage Parts**, the **Insurer** shall not be liable under this Policy to pay any **Loss** arising from any **Claim** made against any **Insured**:

   1. SEXUAL & PHYSICAL ABUSE

      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

      a.  sexual abuse;

    b.  physical abuse;

    c.  licentious, immoral or sexual behavior intended to lead to or culminate in any sexual act; or

    d.  transmission of any communicable disease;

    whether caused by or at the instigation of, or at the direction of, or omission by, any person or cause whatsoever;

(ECF 2 ¶ 18; ECF 2-1 at 31.)  On April 3, 2024, StarStone reiterated its position that Joy is not entitled to defense or indemnification coverage in connection with the EEOC proceeding.  (ECF 2 ¶ 23.)  Joy subsequently retained private counsel to defend it in the EEOC proceeding.  (Id. ¶ 26.)  Joy has thus far incurred at least $15,000 in legal fees and anticipates its liability exposure to be in excess of $75,000.  (Id. ¶ 27.)

       Joy commenced this action against StarStone on July 3, 2024.  (ECF 2.)  It contends that the Policy provides it with liability coverage for Tuli's allegations filed with the EEOC stemming from sexual harassment and sex and gender discrimination.  (See id. ¶¶ 25, 29, 36.)  Joy seeks damages for breach of contract and declarations that StarStone has a duty to defend and a duty to indemnify it under the Policy.  (Id. at 6-10.)  StarStone moves to dismiss the complaint under Rule 12(b)(6), Fed. R. Civ. P.  (ECF 23.)  It contends that the Exclusion bars coverage for the EEOC complaint filed by Tuli in its entirety.  Joy opposes StarStone's motion and has filed a cross-motion for summary judgment under Rule 56, Fed. R. Civ. P., seeking a declaration that StarStone has a duty to defend it in the EEOC proceeding.  (ECF 33.)

DISCUSSION

       The Court first addresses StarStone's motion to dismiss.  It is appropriate to begin with StarStone's motion because it will be granted for the reasons that follow, rendering moot Joy's cross-motion for summary judgment.  See McCracken v. Verisma Systems, Inc., 91 F.4th 600, 609 (2d Cir. 2024) ("[I]t was not error, but rather an exercise of efficiency, to first decide

the motion for judgment on the pleadings, because if the court concluded (as it did) that the Patients' allegations, taken as true, did not state a claim, there would be no value in assessing the evidence on a summary judgment motion.  And based on our foregoing conclusion that the Patients failed to state a claim, the district court also did not err in denying their cross-motion for summary judgment as moot.").

Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must examine only the well-pleaded factual allegations, disregarding any legal conclusions, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 678-79.  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

The Sexual & Physical Abuse Exclusion Bars Coverage

"Under New York law, 'it is well-established that' courts 'determining a dispute over insurance coverage must first look to the language of the policy.'"[2]  Daileader v. Certain Underwriters at Lloyd's London – Syndicate 1861 ("Daileader I"), 670 F. Supp. 3d 12, 28

---

[2] The parties do not dispute that New York law applies, which suffices to establish choice of law.  See Federal Insurance Co. v. American Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law.").

(S.D.N.Y. 2023) (quoting <u>Danaher Corp. v. Travelers Indemnity Co.</u>, 414 F. Supp. 3d 436, 448-49 (S.D.N.Y. 2019)) (brackets omitted), <u>aff'd sub nom.</u> <u>Daileader v. Certain Underwriters at Lloyds London Syndicate 1861</u>, 23-690-cv, 2023 WL 7648381 (2d Cir. Nov. 15, 2023), and <u>aff'd sub nom.</u> <u>Daileader v. Certain Underwriters at Lloyds London Syndicate 1861</u> ("Daileader II"), 96 F.4th 351 (2d Cir. 2024)).  "That language should be 'interpreted according to common speech and consistent with the reasonable expectation of the average insured.'"  <u>Lonstein Law Office, P.C. v. StarStone Specialty Insurance Co.</u>, 22-cv-8670 (AS), 2024 WL 580156, at *2 (S.D.N.Y. Feb. 13, 2024) (quoting <u>In re Viking Pump, Inc.</u>, 27 N.Y.3d 244, 257 (2016)).  Indeed, a court "may not frustrate the intentions of the parties by altering the contract's terms or by reading into the contract meanings not contemplated by the parties."  <u>Paraco Gas Corp. v. Ironshore Indemnity, Inc.</u>, 22-cv-5557 (CS), 2023 WL 4134661, at *4 (S.D.N.Y. June 22, 2023) (quoting <u>Jakobson Shipyard, Inc. v. Aetna Casualty and Surety Co.</u>, 961 F.2d 387, 389 (2d Cir. 1992)), <u>aff'd</u>, 23-1069-cv, 2024 WL 3024658 (2d Cir. June 17, 2024).  Although "ambiguities must be construed in the insured's favor, an insurance policy is 'not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion.'"  <u>Lonstein</u>, 2024 WL 580156, at *2 (quoting <u>In re Viking Pump</u>, 27 N.Y.3d at 258)).

"[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so 'in clear and unmistakable' language."  <u>Seaboard Surety Co. v. Gillette Co.</u>, 64 N.Y.2d 304, 311 (1984) (citation omitted).  The exclusion "must be specific and clear in order to be enforced."  <u>Id.</u>  It is the insurance company that bears the burden of "establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation."  <u>Id.</u> (citations omitted).  Here, the Exclusion that StarStone relies on

eliminates coverage for "any **Claim** . . . based upon, arising out of, directly or indirectly resulting

from, in consequence of, or in any way involving any actual or alleged . . . sexual abuse . . . [or]

licentious, immoral or sexual behavior intended to lead to or culminate in any sexual act . . . ."

(ECF 2-1 at 31.)  The Court concludes that the language of the Exclusion is unambiguous and

that it bars coverage for the EEOC proceeding that Tuli has initiated against Joy.

> The Court's resolution of StarStone's motion largely turns on the meaning of the

term "Claim" in the Exclusion.  StarStone contends that the term encompasses the EEOC

complaint filed by Tuli against Joy as a whole.  According to StarStone, it is therefore sufficient

for it to show that the complaint in its entirety has the necessary relationship, as stated in the

Exclusion, to any one of Tuli's allegations in order for the Exclusion to bar coverage for the

EEOC proceeding.  On the other hand, Joy contends that each allegation in Tuli's discrimination

complaint constitutes a distinct "Claim."  Based on Joy's reading, StarStone must show that

every individual allegation in the complaint is within the scope of the Exclusion for it to deny

coverage for the EEOC proceeding.

> StarStone has the stronger argument.  The Policy defines a "Claim," in relevant

part, as "a civil, administrative, regulatory or arbitration proceeding against an **Insured**, by

reason of a **Wrongful Act**, which is commenced by service of a complaint or similar document

or the filing of a notice of charges."  (Id. at 9.)  According to the Policy itself, then, a "Claim" is

defined as a legal "proceeding," rather than, as Joy contends, a cause of action or allegation

within a proceeding.  Several courts have interpreted similar definitions of the term "Claim" in

insurance policies to mean an entire legal proceeding, not the individual causes of action or

allegations raised in a complaint.  In Daileader II, 96 F.4th at 360, the Second Circuit concluded,

consistent with the district court in Daileader I, 670 F. Supp. 3d at 42, that adversary proceedings

initiated in bankruptcy court were "Claims" based on the policy's definition of "'Claim' as a 'civil . . . proceeding,'" instead of "as a cause of action within a proceeding."  The district court had construed the same definition of "Claim" as "a civil proceeding" to encompass the adversary proceedings "as a whole."  Daileader I, 670 F. Supp. 3d at 42 (quoting XL Specialty Insurance Co. v. Agoglia, 08-cv-3821 (GEL), 2009 WL 1227485, at *9 (S.D.N.Y. Apr. 30, 2009), reconsideration partially granted on other grounds sub nom. Murphy v. Allied World Assurance Co., 08-cv-3821 (GEL), 2009 WL 1528527 (S.D.N.Y. May 29, 2009), and aff'd sub nom. Murphy v. Allied World Assurance Co. (U.S.), 370 F. App'x 193 (2d Cir. 2010)).  Likewise, in Agoglia, 2009 WL 1227485, at *8, the relevant policies defined a "Claim" as "any civil proceeding commenced by service of a complaint or similar pleading," "a criminal proceeding commenced by return of an indictment," or "any civil or criminal judicial proceeding in a court of law or equity, or arbitration."  Because the policies themselves defined "a 'claim' . . . as a legal proceeding and not, as the insureds would have it, as each separate portion of a complaint specifying the legal theories defining a cause of action or the relief the plaintiff seeks," the district court equated a "Claim" with each underlying lawsuit "as a whole" that had been brought against the insureds.  Id. at *8-9.  And in Paraco Gas, 2023 WL 4134661, at *5-6, the district court also concluded, "[b]ased on the clear language" of the policy's definition of "Claim" as "a civil . . . proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint," that "'Claim' refers to the entire [underlying lawsuit against the insureds] rather than any individual cause of action or allegation raised in the [complaint]."

        In support of its own reading of the Policy's definition of "Claim" to mean each individual allegation in Tuli's complaint filed with the EEOC, Joy relies on the First

Department's decision in <u>Westpoint International, Inc. v. American International South</u> <u>Insurance Co.</u>, 71 A.D.3d 561 (1st Dept. 2010).  In <u>Westpoint</u>, the court rejected the insurer's argument that "because the policy defines 'Claim' to mean lawsuit, rather than cause of action, the determination of whether the exclusion applies must be based not on separate causes of action but on the complaint as a whole."  <u>Id.</u> at 562.  The court characterized the insurer's proposed construction as "unduly rigid . . . in light of the realities of litigation" and as "a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable."  <u>Id.</u> (citation omitted).

The Second Circuit has stated that while decisions of New York's intermediate appellate courts are "'helpful indicators' of how the Court of Appeals would decide" issues of New York law, "we are not 'strictly bound' by decisions of the Appellate Division, particularly when we have 'persuasive data' that the Court of Appeals would 'decide otherwise.'" <u>Reddington v. Staten Island University Hospital</u>, 511 F.3d 126, 133 (2d Cir. 2007) (quoting <u>DiBella v. Hopkins</u>, 403 F.3d 102, 112 (2d Cir. 2005)), <u>certified question accepted</u>, 9 N.Y.3d 1020 (2008), and <u>certified question answered</u>, 11 N.Y.3d 80 (2008).  This Court, with due respect to the First Department's decision in <u>Westpoint</u>, declines to follow it for two reasons. First, <u>Westpoint</u> was decided at least 13 years before the Second Circuit decided <u>Daileader II</u> and yet the <u>Daileader II</u> court, applying New York law, construed "Claim" in a contrary manner notwithstanding the court's express consideration of <u>Westpoint</u>.  <u>See</u> <u>Daileader II</u>, 96 F.4th at 360.  Second, the drafter of the policy language at issue here used the term "portion of a **Claim**" elsewhere in the Policy but not in the Exclusion.  (ECF 2-1 at 21.)  Certainly, if the Exclusion

was intended to exclude coverage for only a portion of a "Claim," the language of the Exclusion could have said so.[3]

The Court concludes that the Policy's definition of "Claim" is unambiguous and refers to Tuli's discrimination complaint filed with the EEOC as a whole, i.e., "a civil [or] administrative . . . proceeding," rather than any of Tuli's individual allegations.[4]  (ECF 2-1 at 9.)

Thus, the Exclusion applies if Tuli's complaint filed with the EEOC against Joy, as a whole, is "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged . . . sexual abuse . . . [or] licentious, immoral or sexual behavior intended to lead to or culminate in any sexual act . . . ."  (ECF 2-1 at 31.)  The Court concludes that it is.  To start, the phrase "arising out of, directly or indirectly resulting from, . . . or in any way involving" utilizes language that is, as courts have recognized, "clearly and unmistakably broad."  Lonstein, 2024 WL 580156, at *2.  This unambiguous language captures any allegation of "sexual abuse" or "licentious, immoral, or sexual behavior intended to lead to or culminate in any sexual act" that has "some causal relationship to," "contributed to," or has "some kind of connection or relationship" to the discrimination complaint.  Id. (citations omitted).  The use of "directly or indirectly resulting from, . . . or in any way involving" in particular dictates that the Exclusion be read broadly.  While "arising out of" requires a court to employ a "but-for" test, Mount Vernon Fire Insurance Co. v. Creative Housing Ltd., 88 N.Y.2d

---

[3] The First Department cited Westpoint with approval in a case where the exclusion referred to "that portion of" any "Claim" as being excluded from coverage.  Alvarez v. XL Specialty Insurance Co., 202 A.D.3d 566 (1st Dept. 2022).  At least one federal district court pre-Daileader I & II has cited and followed Westpoint.  Darwin National Assurance Co. v. Westport Insurance Corp., 13-cv-02076 (PKC), 2015 WL 1475887 (E.D.N.Y. Mar. 31, 2015).

[4] This is consistent with Joy's initial position in its complaint, where it defined Tuli's discrimination complaint filed with the EEOC as the "Underlying Proceeding" and alleged that "[t]he Underlying Proceeding constitutes a 'Claim' as defined in the Policy as it . . . is a proceeding against an 'Insured,' by reason of an alleged 'Wrongful Act,' which is commenced by the filing of a notice of charges."  (ECF 2 ¶¶ 11, 37.)  Joy's allegations constitute binding judicial admissions.  See Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003).

347, 353 (1996), "directly or indirectly resulting from" and "in any way involving" do not.  See Daileader I, 670 F. Supp. 3d at 44 ("Courts have interpreted 'caused directly or indirectly' to mean 'contributed to,' not 'caused exclusively' or 'a but-for cause of.'"); Darwin, 2015 WL 1475887, at *12 ("While 'based upon' and 'arising out of' imply a causal relationship, 'in any way involving' does not require one.").  Moreover, the phrase's use of the conjunction "or" means that StarStone need only show that the discrimination complaint "bears *one* of the several possible relationships" listed in the Exclusion with Tuli's allegations.  Pereira v. National Union Fire Insurance Co. of Pittsburgh, Pa., 525 F. Supp. 2d 370, 376 (S.D.N.Y. 2007), aff'd sub nom. Pereira v. Gulf Insurance Co., 330 F. App'x 5 (2d Cir. 2009).

      Tuli's allegations regarding her supervisor's repeated sexual advances towards her, amid his stated desire to have sex with her and efforts to pressure her to have sex with him, clearly qualify as allegations of "sexual behavior intended to lead to or culminate in any sexual act."  Although the Policy does not define the words in this phrase, there is no ambiguity to them.  See Michael Cetta, Inc v. Admiral Indemnity Co., 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020) ("'[T]he lack of a definition' of course does not render a word ambiguous.") (quoting Lend Lease (U.S.) Construction LMB Inc. v. Zurich American Insurance Co., 136 A.D.3d 52, 56 (1st Dept. 2015), aff'd on other grounds sub nom. Lend Lease (US) Construction LMB Inc. v. Zurich American Insurance Co., 28 N.Y.3d 675 (2017)).  To the contrary, their plain and ordinary meaning is readily ascertainable.  The word "sexual" means "of, relating to, or associated with sex or the sexes."[5]  To go along with this, the word "behavior" means "the way in which someone conducts oneself or behaves" and the word "intend" means "to have in mind

---

[5] https://www.merriam-webster.com/dictionary/sexual (last accessed June 4, 2025).

as a purpose or goal."[6]  Tuli alleges that her supervisor told her on numerous occasions that he

wanted to have sex with her.  He remarked to her, among other things, "I want to make love – I

want to be with you.  I want to have fun with you," "we can spend the night together then you

can go back," "I want to be with you," and "I truly want to be with you."  (ECF 2-2 ¶¶ 11, 13,

15, 18, 21.)  Tuli also alleges that her supervisor pressured her to have sex with him, telling her,

among other things, "I'm not asking you for anything bad.  It's something that's normal between

a man and a woman," "Don't make me beg.  I don't want to beg," and "Make it happen.  Only

you can make it happen."  (Id. ¶ 20.)  Taken in this context, Tuli's allegations of repeated

instances where her supervisor made remarks about her body, including "I like everything about

you—I like your body—we should be together we should have fun together" and "Your boobs

and ass attract me," and that while they were in his office trailer he asked her to show him her

breasts and then touched her cheeks, shoulder, and neck and groped her breasts demonstrate a

pattern of conduct that can only be reasonably understood as having been carried out by the

supervisor for the purpose of having sex with Tuli.  (Id. ¶¶ 11, 13.)

       Tuli's allegation that her supervisor groped her breasts while they were in his

office trailer also clearly qualifies as an allegation of "sexual abuse."  While the Policy does not

define this term, it is nonetheless unambiguous.  See Michael Cetta, 506 F. Supp. 3d at 176

(citation omitted).  The dictionary definition of "abuse" is "physical maltreatment."[7]  Consistent

with this, New York Penal Law § 130.55 provides that "[a] person is guilty of sexual abuse in the

third degree when he or she subjects another person to sexual contact without the latter's consent

---

[6] https://www.merriam-webster.com/dictionary/behavior (last accessed June 4, 2025); https://www.merriam-webster.com/dictionary/intend (last accessed June 4, 2025).
[7] https://www.merriam-webster.com/dictionary/abuse (last accessed June 4, 2025).

. . . ."[8]  "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party . . . ."  N.Y. Penal L. § 130.00(3).  "Where the offense charged is sexual abuse," a lack of consent results from "any circumstances, in addition to forcible compulsion or incapacity to consent, in which the victim does not expressly or impliedly acquiesce in the actor's conduct . . . ."  Id. § 130.05(2)(c).  Therefore, the Court concludes that the plain and ordinary meaning of the term "sexual abuse" in the Exclusion is the touching of another person's intimate parts for sexual gratification and without their consent.  Tuli's allegation that her supervisor, who was pressuring her to have sex with him, groped her breasts while they were in his office trailer and after she had told him that she was uncomfortable and her body had started "shaking in fear" meets this definition.  (ECF 2-2 ¶ 13.)

As detailed above, Tuli's allegations of  "sexual behavior intended to lead to or culminate in any sexual act" on the part of her supervisor constitute the misconduct that is at the center of her complaint filed with the EEOC against Joy.  Applying the Exclusion's broad language, not only did these allegations "contribute[] to" or have "some kind of connection or relationship" to Tuli's discrimination complaint as a whole, but they were also a but-for cause of it.  Lonstein, 2024 WL 580156, at *2 (citations omitted).  In addition, Tuli's allegation of "sexual abuse" at the hands of her supervisor is one of the key instances of misconduct upon which her complaint is premised.  This allegation at a minimum "contributed to" or has "some kind of connection or relationship" to the EEOC complaint filed by Tuli as a whole.  Id. (citations omitted).  Accordingly, the Court concludes that the Exclusion unambiguously bars coverage for the EEOC proceeding that Tuli has initiated against Joy.

---

[8] The Court relies on the Penal Law's definitions solely for guidance in determining the plain and ordinary meaning of the term "sexual abuse" in the Exclusion.

Joy's remaining arguments as to why the Exclusion does not bar coverage for the EEOC proceeding are unpersuasive. Joy contends, based on general principles of New York insurance law, that an insurer is required to defend an entire action in which any allegation falls within the scope of a policy. See, e.g., Massachusetts Bay Insurance Co. v. Penny Preville, Inc., 95-cv-4845 (RPP), 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) ("The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy.") (citing Seaboard, 64 N.Y.2d at 310-11). According to Joy, because Tuli's discrimination complaint includes allegations of sexual harassment and sex and gender discrimination that are covered by the Policy, StarStone has a duty to defend notwithstanding the fact that the Exclusion may apply to some of Tuli's other allegations. [9] In this case, however, the Policy's definition of "Claim" to encompass the entirety of the EEOC proceeding and the Exclusion's use of exceedingly broad language to delineate the possible relationships between the EEOC complaint filed by Tuli and Tuli's allegations overcomes New York insurance law's default rules. See Daileader II, 96 F.4th at 360 ("The plain contractual language defeats Daileader's invocation of general New York contract principles."); Daileader I, 670 F. Supp. 3d at 44 ("The default rules of New York insurance law are of no moment given these provisions, because 'parties to an insurance arrangement may generally contract as they wish, and the courts will enforce their agreements without passing on the substance of them.'") (citation omitted). Taking Joy's argument one step further, even though the First Department's decision in Westpoint "indicates that defining "'Claim' to mean lawsuit" does not automatically permit

---

[9] Relatedly, Joy argues that "the Policy's allocation clause also provides that the insured receives defense costs *even for uncovered matters* so long as there is a covered matter within the claim." (ECF 33 at 18.) Joy's reading of the Policy's "Allocation" clause is of no moment, however, because the clause makes plain that it only applies "[i]f both **Loss** covered by this Policy and loss not covered by this Policy are incurred as a result of a **Claim** . . . ." (ECF 2-1 at 20.) As the Court has concluded, however, the Exclusion bars coverage for the EEOC proceeding in its entirety, and therefore there is no "**Loss** covered by this Policy" that has been incurred as a result of Tuli's complaint filed with the EEOC.

denying coverage where some allegations may be covered and others not," Daileader II, 96 F.4th at 360 (quoting Westpoint, 71 A.D.3d at 562), the exclusionary language at issue in that case was the term "arising out of," which requires a court to employ a but-for test. Westpoint, 71 A.D.3d at 562. Here, the Exclusion extends more broadly to any "Claim" "directly or indirectly resulting from" or "in any way involving" the conduct in question, which does not require a causal relationship. Thus, the Policy's and the Exclusion's express terms defeat Joy's invocation of general principles of New York insurance law and in this case permit denying coverage for the EEOC proceeding based on Tuli's allegations.

In contrast, this Court has held in the context of a differently worded policy that a complaint against the insured alleging conduct both falling within the four corners of an "Abuse or Molestation Exclusion" and also falling outside the exclusion triggered the insurer's duty to defend. Starr Indemnity and Liability Co. v. Choice Hotels International, Inc., 20-cv-3172 (PKC), 2021 WL 2457107, at *4 (S.D.N.Y. June 16, 2021). Notably, the exclusion at issue in that case did not contain the sweeping term "in any way involving" that distinguishes Starr Indemnity from this case. See id. ("This insurance does not apply to 'bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of: 1. The actual or threatened abuse or molestation by anyone of any person . . . .").

Joy also argues that the Court's reading of the Exclusion to bar coverage for the EEOC proceeding is so broad as to render the Policy's sexual harassment coverage illusory. See Lend Lease, 28 N.Y.3d at 684 (noting that "an illusory contract—that is, '[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation'—is 'unenforceable'") (quoting Black's Law Dictionary 370 (9th ed. 2009)). But "an insurance policy is not illusory if it provides coverage for some acts subject to a potentially wide

exclusion." Id. at 685 (citation, internal quotation marks, and brackets omitted).  Joy ignores the

fact that the Policy provides coverage for much more than just an "Employment Wrongful Act"

premised on actual or alleged sexual harassment.  (ECF 2-1 at 9.)  The Policy contains a

Directors & Officers Coverage Part and a Fiduciary Coverage Part in addition to the

Employment Practices Coverage Part within which sexual harassment is covered.  (Id. at 4-13.)

Moreover, the Employment Practices Coverage Part itself applies to several forms of conduct

unrelated to sexual harassment, including "retaliation in response to any Employee exercising his

or her rights under any law," "defamation, humiliation, or invasion of privacy," and "breach of

any verbal, written or implied contract of employment . . . ."  (Id. at 9.)  Thus, even if, as Joy

contends, the Exclusion effectively bars coverage for any "Employment Wrongful Act" of sexual

harassment, it still "does not defeat *all* of the coverage" that the Policy affords or "create a result

that would have the exclusion swallow the policy."  Lend Lease, 28 N.Y.3d at 685 (citation and

internal quotation marks omitted).  As a result, the Exclusion does not render the coverage

afforded under the Policy illusory.

        The Court concludes based on the Exclusion that Joy is not entitled to defense and

indemnification coverage from StarStone for the EEOC proceeding initiated against it.

Accordingly, StarStone's motion to dismiss Joy's complaint is granted.

        Having granted StarStone's motion to dismiss, the Court also denies as moot

Joy's cross-motion for summary judgment seeking a declaration that StarStone has a duty to

defend it in the EEOC proceeding.  See McCracken, 91 F.4th at 609.

CONCLUSION

        For these reasons, StarStone's motion to dismiss Joy's complaint is GRANTED and Joy's cross-motion for summary judgment is DENIED as moot.  The Clerk of Court is respectfully directed to terminate the pending motions at ECF 23 and ECF 33.

        SO ORDERED.

_____

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 13, 2025